994 F.2d 513
 61 Fair Empl.Prac.Cas. (BNA) 1607,
61 Empl. Prac. Dec. P 42,278
Joseph R. WEBER, Appellant,
v.
AMERICAN EXPRESS CO.; Systems Associates, Inc., d/b/a
Sai-Systems Associates, Inc., d/b/a American Express
Information Services Company, Health Systems Group, d/b/a
The Health Systems Group, d/b/a American Express Health
Systems, Appellees.
 No. 92-2014.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 18, 1992.
Decided June 2, 1993.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 17, 1993.
 
 Mary Anne Sedey, St. Louis, MO, argued, for appellant.
 Clifford A. Godiner, St. Louis, MO, argued (Richard E. Jaudes, on the brief), for appellees.
 Before FAGG, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 Joseph R. Weber brought this employment discrimination action alleging Systems Associates, Inc. (SAI), a subsidiary of American Express, failed to hire him in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1988), and the Missouri Human Rights Act (MHRA), Mo.Ann.Stat. ch. 213 (Vernon 1983). Weber appeals the district court's order granting summary judgment to SAI. We affirm.
 
 
 2
 In 1986, McDonnell Douglas hired Weber to work in its Health Systems Company (Health Systems), a subsidiary that sold data processing systems to hospitals. Weber worked at various middle-management marketing positions. After suffering a heart attack in August 1988, Weber was assigned duties of providing professional services to clients. In early 1989, McDonnell Douglas informed its employees that American Express was going to buy Health Systems and merge it with SAI, which also supplied computer software to hospitals. SAI selected the Health Systems vice presidents it wished to head each new department in the merged company and chose the total number of employees for each department. SAI instructed the vice presidents to decide which employees to retain. Lawrence Covington, Weber's superior at Health Systems, was selected to head SAI's marketing and planning department.
 
 
 3
 During the reorganization, SAI decided not to continue professional client services, Weber's field of expertise, and eliminated his Health Systems' position in the merged company. SAI offered Joseph Scherer, who worked in a consultant relations position with Health Systems, a similar position in the merged company. After Scherer turned down the offer, Covington recommended Weber for the consultant relations position in SAI's new marketing and planning department because of Weber's experience in client services. Before the hiring was completed, however, Covington decided not to become employed with SAI. Rather than choosing another vice president to head Covington's department, SAI decided to eliminate the department. In dividing the department's functions among several other departments, SAI did not hire anyone to fill Scherer's consultant relations position and there is no indication Scherer's duties were assigned to employees in the other departments. Although SAI's personnel officer tried to find Weber another position, no suitable opening was found. SAI did not interview or hire Weber. When Health Systems closed in March 1989, McDonnell Douglas discharged Weber.
 
 
 4
 One month after the merger, SAI temporarily assigned consultant relations duties to Morris Berger. Berger had been the product marketing manager for pricing and packaging at Health Systems and continued in this position with SAI after the merger. Berger performed consultant relations for four to six weeks then returned to his product marketing position. After Berger's temporary assignment, no one performed consultant relations at SAI until two years after the merger, when SAI assigned consultant relations duties to a senior vice president. At this time the duties of the position were expanded to include building good relationships with SAI's national clients.
 
 
 5
 Weber, who was 51 years old and suffering from heart disease when the companies merged, contends a consultant relations position at SAI existed after the merger. Weber alleged SAI failed to hire him for the consultant relations job because of his age in violation of the ADEA and because of his age and disability in violation of the MHRA. The district court concluded Weber failed to establish a prima facie case of employment discrimination and granted SAI's motion for summary judgment.
 
 
 6
 In reviewing a grant of summary judgment, we affirm only if the record, when viewed in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable factual inferences, shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Johnson v. Minnesota Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir.1991); see Fed.R.Civ.P. 56(c). Although summary judgment should seldom be granted in employment discrimination cases, Johnson, 931 F.2d at 1244, if the plaintiff fails to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate, see Celotex Corp v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-2553, 91 L.Ed.2d 265 (1986); Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1500 (8th Cir.1987), cert. denied, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988).
 
 
 7
 To establish a prima facie case of discrimination in failing to hire under both the ADEA and the MHRA, Weber must show: (1) he was a member of the protected group; (2) he applied and was qualified for an available job; (3) he was rejected despite his qualifications; and (4) the position remained open and the employer continued to seek applicants with similar qualifications. Weber v. Block, 784 F.2d 313, 315 n. 4 (8th Cir.1986); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); see Midstate Oil Co. v. Missouri Comm'n on Human Rights, 679 S.W.2d 842, 845-46 (Mo.1984) (en banc) (adopting McDonnell Douglas test in Missouri employment discrimination case). We agree with the district court that Weber failed to establish a prima facie case.
 
 
 8
 Weber has not generated a factual dispute on an essential element of his prima facie case: the availability of a full-time consultant relations position in the merged company. See Rush v. McDonald's Corp., 966 F.2d 1104, 1118 (7th Cir.1992) (absence of available position is fatal to establishing prima facie case of discrimination in hiring); see also International Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977). To establish that there actually was a vacant position after the merger, Weber must show SAI had a continuing need for consultant relations services that Weber could perform. See Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1269 (8th Cir.), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). The record is undisputed, however, that although SAI's plans included a consultant relations position before the merger, when the merger became effective, SAI neither filled Scherer's position nor sought applicants to fill the position.
 
 
 9
 Weber argues a consultant relations position existed after the merger because SAI later assigned Berger to the position. We disagree. Although SAI assigned consultant relations duties to Berger one month after the merger, the assignment was merely temporary. Berger, who did not possess a background in consultant relations like Weber, completed the assignment in four to six weeks. Berger then returned to his product marketing position and no one was given responsibility for consultant relations for almost two years. Weber presents no evidence that consultant relations duties were spread to other employees or that a permanent replacement was hired during this two-year period. SAI's use of an existing full-time employee for this brief assignment in an area for which Weber was qualified, shows only that SAI had a temporary need for this type of work, not that SAI had a full-time position into which Weber could have been hired. See Rush, 966 F.2d at 1118.
 
 
 10
 We also reject Weber's contention that SAI's appointment of a senior vice president to a consultant relations role two years after the merger establishes the position existed when Weber sought it. To establish that a consultant relations position was available to him, Weber must show SAI filled the position within a reasonable time after the merger. See Gay v. Waiters' & Dairy Lunchmen's Union, 694 F.2d 531, 549 (9th Cir.1982). The senior vice president's appointment does not satisfy the necessary timeliness link to show the position existed at the time of the merger. See id. Further, assuming the appointment establishes that the position was available to Weber, Weber still cannot make a prima facie case because he cannot show SAI filled the position with a person of Weber's qualifications. Because SAI changed the position's focus to include building rapport with national clients, SAI required the services of a higher-ranking employee than Weber. Thus, SAI appointed a senior vice president with qualifications clearly different than Weber's. See Carlile v. South Routt Sch. Dist. RE-3J, 739 F.2d 1496, 1501 (10th Cir.1984).
 
 
 11
 Because Weber has failed to establish a prima facie case of discrimination in hiring, the district court properly granted summary judgment to SAI. Accordingly, we affirm.
 
 
 12
 MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.
 
 
 13
 In my view, plaintiff has presented enough evidence from which a rational finder of fact could conclude that the work that plaintiff was doing continued to be performed after the relevant merger. There are the affidavit of Morris Berger and the deposition of Lowell Summers, both of them to the effect that plaintiff's work continued and continues to be performed. The court, as it is entitled to, focuses on an evident hiatus, when the record is silent on who, if anyone, was performing plaintiff's duties. But this hiatus, even if it could not be filled up by testimony at trial, is as consistent with a vacancy in "the job" as it is with "the job" no longer existing. (There are many federal judgeships that have been vacant for a year or two; yet no one suggests that they do not exist.) An employer who is bent on discrimination and who can read the relevant cases can always make do without filling a position, even one that is of special importance, and then, under our holding today, fill it in a manner that makes it mysteriously not the old job, but a new one. I do not intimate, of course, that I would find that this case presents such circumstances, but only that rational fact-finders, drawing on their experience in the daily affairs of life, which trial courts regularly invite them to consult, could so conclude.
 
 
 14
 It is true that we have some over-articulated case law that can be pieced together to make the result that the court reaches today not implausible. But we need to recall that a motion for summary judgment is not an opportunity for the trial court to predict which party is going to win or ought to win. It is not even an opportunity to decide whether a motion for a new trial would have to be granted should a verdict against the moving party be returned on the evidence before the court. In my estimation, the present decision trenches upon ground reserved to the jury.
 
 
 15
 I therefore respectfully dissent.