No. 96-1862

Isiah Thomas,                          *
                                       *
        Plaintiff -                    *
        Appellant,                     *
                                       *
                                       *  Appeal from the United
    v.                                 *  States District Court for the
                                       *  Eastern District of Missouri
                                       *
Marvin T. Runyon, Jr.,                 *
Postmaster General,                    *
U.S. Postal Service,                   *
                                       *
        Defendant -                    *
        Appellee.                      *


        Submitted:  November 22, 1996

        Filed: March 18, 1997


Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and SACHS,[*]
    District Judge.


SACHS, District Judge

    Isiah Thomas filed this action against his former employer, the
United States Postal Service, alleging race discrimination in violation of
Title VII, 42 U.S.C. § 2000e et seq.  The district

---

[*]The Honorable Howard F. Sachs,  United States District
Judge for the Western District of Missouri, sitting by
designation.

court[1] granted summary judgment for the Postal Service and Thomas appeals. Because Thomas failed to show that the defendant's legitimate, nondiscriminatory reasons for its adverse employment actions against him were pretextual, we affirm.

## I.

Isiah Thomas, an African-American male, was employed by the Postal Service as a Supervisor in the Postal Service's Maintenance Department at the St. Louis Bulk Mail Center. From 1980 to December 1991, Thomas was assigned to supervise the Tour 3 shift mechanics. In December 1991, plaintiff was temporarily reassigned to supervise custodians on the Tour 3 shift and was ultimately transferred to Tour 1, the night shift. Neither the reassignment nor transfer was disciplinary in purpose.

Thomas' transfer was the result of a longstanding personality conflict between himself and Michael Carmen, a mechanic under his supervision. Carmen was a white male and a member of the American Postal Workers Union. Thomas, as a supervisor, was not a bargaining unit employee. On December 2, 1991, plaintiff's supervisor assigned him to the custodial shift in order to separate the two men. On December 9, 1991, a labor-management meeting was held to discuss a recent verbal dispute between Thomas and Carmen. At this meeting plaintiff admitted to management officials that, in response to Carmen's threat to damage his car, Thomas told Carmen, "If anything happens to my car, I'm going to fuck you up."

Following the meeting Dennis Apprill, Director of Plant Maintenance, determined that further safeguards were needed to avoid future altercations between the two men. Apprill and Clarence Knight, the General Manager of the Bulk Mail Center and an African-American, decided that it was "in the best interest of the

---

[1]The Honorable Jean C. Hamilton, Chief District Judge for the Eastern District of Missouri.

Postal Service" to reassign plaintiff to Tour 1.  Ron Treece, a white male, was transferred to plaintiff's former position as Tour 3 Supervisor. Management took no disciplinary action against either Carmen or Thomas.[2]

Plaintiff filed an Equal Employment Opportunity Complaint with defendant on February 3, 1992.  On March 25, 1994, an administrative judge issued a recommended decision concluding that, based on the record, defendant had discriminated against Thomas.  Defendant rejected the administrative judge's decision in its Final Agency Decision issued June 3, 1994.  Thomas then filed this lawsuit.  On February 12, 1996, the district court, on essentially the same record as that before the administrative judge, granted summary judgment for the Postal Service.

## II.

We review a grant of summary judgment de novo.  Stevens v. St. Louis University Medical Center, 97 F.3d 268, 270 (8th Cir. 1996).  Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Roxas v. Presentation College, 90 F.3d 310, 315 (8th Cir. 1996); Fed. R. Civ. P. 56(c).  While a party moving for summary judgment has the burden of showing that there is no genuine issue of fact for trial, a nonmoving party seeking to avoid having summary judgment entered against it may not rest on mere allegations or denials, but must set forth specific facts sufficient to raise a genuine material issue for trial.  Ruby v. Springfield R-12 Public School District, 76 F.3d 909, 911 (8th Cir. 1996).

---

[2]The Postal Service tacitly concedes, however, that the unwanted transfer to the night shift was sufficiently adverse to give plaintiff standing to complain, and we agree.

Thomas' discrimination claims are analyzed under the framework set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). The plaintiff has the initial burden of establishing a prima facie case of racial discrimination: that (1) he is a member of a protected class, (2) he is qualified for the position, (3) adverse action was taken against him, and (4) that action occurred in circumstances giving rise to an inference of discriminatory motivation. Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995). Once the plaintiff makes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the defendant advances such a nondiscriminatory reason, the plaintiff must prove that defendant's proffered reasons are a pretext for illegal discrimination. Ruby, 76 F.3d at 911.

## III.

Assuming Thomas presented a prima facie case of racial discrimination, the Postal Service has presented a legitimate, nondiscriminatory reason for its adverse employment action: that separating Thomas and Carmen was in the Postal Service's interest, to avoid the potential for further disruptive personality conflict and a risk of a violent confrontation, and it was economically advantageous to transfer Thomas instead of Carmen. Because Thomas was a non-union supervisor, there was little cost associated with transferring him to another shift, while Carmen, if he were involuntarily transferred, would be entitled to premium pay (150% of his salary) for the duration of the reassignment. Although the Postal Service did not initially present its motivation as skillfully as might have been hoped, the cost-motivation argument was not a lawyer's afterthought. The relative costs of transferring Thomas and Carmen were explicitly referred to by one

postal manager in a 1992 affidavit.[3]  Thus, although Apprill did not explicitly describe such motivation for his decision to reassign Thomas, we may assume that the relative costs of transfer were well known to management, and would obviously be a consideration, as claimed in litigation.  We agree with the district court that the Postal Service has carried its burden of demonstrating a legitimate business reason for reassigning the plaintiff.

The Postal Service having advanced a nondiscriminatory reason for its actions, the burden shifts back to Thomas to present evidence which could support a finding that the proffered reason was pretextual.  Our determination is limited to whether the employer gave an honest nondiscriminatory explanation for its actions, rather than to weigh the wisdom of any particular employment decision.  See Krenik v. County of LeSueur, 47 F.3d 953, 960 (8th Cir. 1995) (quotations omitted).  At all times the burden of demonstrating a genuine issue of fact as to whether the employer intentionally discriminated against him because of race remains with plaintiff.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).  Thomas has failed to meet this burden.

First, Thomas asserts that management engaged in racial stereotyping by concluding that he had a belligerent attitude and was predisposed to violence.  Plaintiff argues that this finding was not factually supported and rests on the stereotype that African-American men are prone to violence.  We disagree.  Apprill inferred the possibility of violence after learning what Thomas said to Carmen.  Plaintiff's language, without racial stereotyping of its significance, shows that the relationship had deteriorated to the level of physical threats, even if there were little actual danger that Thomas would act on his words.  It was objectively

---

[3]The affiant, Adell Allen, believed, however, that "standing up to the union," which allegedly was the source of Carmen's hostility toward Thomas, was worth the cost.

5

reasonable, quite apart from race, for Apprill to conclude that a physical altercation was possible if the two men were not separated.

Thomas also contends that his transfer was the result of harassment on the part of the union. He alleges that Michael Patrick and Don Foley, two white maintenance mechanics and union representatives, and Carmen conspired to undermine his supervisory authority and to have him removed from Tour 3. It appears that Foley and Patrick, who had been under Thomas' direct supervision, resented Thomas' enforcement of a management policy regarding on-the-clock timing of union activities. Some postal officials expressed a belief that Foley and Patrick induced Carmen to create trouble with Thomas. The union representatives had apparently long sought a transfer of Thomas to another shift, and the management decision in December 1991 achieved their alleged goal. Even if plaintiff could argue that the complaint about the expense of transferring Carmen rather than Thomas was in some sense pretextual, therefor, the alternate reason suggested by the record for transferring Thomas is unrelated to racial discrimination. Under such circumstances, summary judgment for a defendant employer is appropriate. See n. 4 in Ryther v. KARE 11, No. 94-3622 (8th Cir. en banc, March 6, 1997), citing Rothmeier v. Investment Advisers. Inc., 85 F.3d 1328, 1337 (8th Cir. 1996).

Thomas does argue on appeal that there is evidence of racial hostility because Ron Dunlop, a white supervisor on the same shift, had also attempted to restrict on-duty union activities but had not

6

been harassed.[4]  We could arguably rule that Thomas has failed to demonstrate that the union's treatment of him was racially motivated.  The administrative judge pointed out that there was "essentially a dispute between management and the American Postal Workers Union concerning the usage of on-the-clock hours for union activities."  Appendix of Defendant-Appellee, p. 48.  She also compared Thomas with Dunlop to determine if the union was targeting a black supervisor as such.  Foley and Patrick worked directly under Thomas while the record does not indicate a comparable close supervisory relationship between Dunlop, Foley and Patrick that would antagonize Foley and Patrick to the same extent they were antagonized by Thomas.[5]  It is noteworthy that Adell Allen, a black supervisor, does not infer any racial problem, but only a union-management dispute where management, essentially, buckled to the union.

The issue of racial bias exhibited by union members was not, however, presented to Chief Judge Hamilton in the Thomas brief resisting summary judgment.  It was not an issue decided by her.  Under the circumstances we choose to make no ruling on the adequacy of the record to establish a submissible issue of union bias.  We conclude that Thomas cannot present the issue to us because he did not present it to the district judge.

---

[4]We give plaintiff the benefit of the doubt in framing this issue.  Before us and before the district court plaintiff contended that direct management bias was the issue rather than action motivated by union bias.  There is, however, a possible issue of responsibility for acting in a manner that adopts the bias of others.  Compare Williams v. TWA, 660 F.2d 1263, 1270 (8th Cir. 1981) (limited as to damages by Muldrew v. Anheuser-Busch, Inc., 728 F.2d 989 (8th Cir. 1984)) (racial discrimination of employer shown by action taken in reliance on passenger's unverified accusations containing strong racial overtones).

[5]The statement of supervisor Harry A. Logan also contains a comment that the union leaders "knew that they couldn't go after [Dunlop] the way they went after Ike."  This is highly ambiguous, but apparently is not a racial reference; otherwise it likely would have been developed as part of the investigation.

Thomas further argues that no white supervisor had ever been transferred to an undesired shift under comparable circumstances. No similarly situated individuals have been cited, however, and, absent a comparable situation, the failure to reassign a white supervisor has no probative value.

Thomas' replacement by a white supervisor might be the most vulnerable part of the Postal Service's case, but Apprill, the deciding official, successfully clears himself of allegations of race bias in his unchallenged affidavit. Apprill stated that he had hoped to transfer another African-American supervisor to Tour 3, but was informed that this individual was not interested in reassignment. He even stated a preference for a black supervisor, in order to maintain racial diversity in the work force. He ultimately decided, however, to move Ron Treece to the position.

We recognize that Apprill's sworn statements can perhaps be characterized as self-serving, but they are plausible, unchallenged and not circumstantially rebutted. If plaintiff was not content with the record, he could have taken Apprill's deposition or otherwise sought to develop inconsistencies or clear issues of credibility. There is substantial case-law in the Circuit sustaining summary judgment where this is not done. E.g., Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996); Matter of Citizens Loan & Savings Company, 621 F.2d 911, 913 (8th Cir. 1980) (sworn denial by family members of consultation about company's solvency). In order to defeat the motion, plaintiff must develop some evidence or argument going beyond possible self-interest of the witness; this he has not done.

Thomas has failed to carry his burden of proving pretext because he has put forward inadequate evidence to prove that his transfer was racially motivated. The present record does support a possible factfinder inference of management's yielding to the union, but not a submissible issue of race discrimination. This

8

case is thus distinguishable from the current decision of the Court en banc, holding that a reasonable jury could infer prohibited discrimination from the trial record, and that judicial resolution of the controversy would be inappropriate.  Ryther v. KARE 11, supra.  Although the question of whether summary judgment should be used in these circumstances is not without difficulty, we are satisfied that the result reached by the district court was sound.[6]

Accordingly, we affirm the judgment of the district court.

Affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]The administrative judge's approach is not fully persuasive, in our judgment, because it relies excessively on the prima facie case and fails to consider appropriately the essentially undisputed factual materials available in the investigation documents.