**Monica KINDRED, Plaintiff,**

v.

**NORTHOME/INDUS SCHOOL DISTRICT NO. 363, Defendant.**

**No. CIV. 5-95-258 RLE.**

United States District Court,
D. Minnesota,
Fifth Division.

June 2, 1997.

Craig Steven Davis, Davis Law Office, Grand Rapids, MI, for Plaintiff.

Monica Kindred, Northome, MN, pro se.

Gregory Scott Madsen, Daniel J.S. Becker, Knutson, Flynn, Deans & Olsen, St. Paul, MN, for Defendant.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 28 U.S.C. § 636(c)(3), upon the Defendant's Motion for Summary Judgment.

A Hearing on the Motion was held on April 3, 1997, at which time the Plaintiff appeared by Craig S. Davis, Esq., and the Defendant appeared by Daniel J.S. Becker, Esq.

For reasons which follow, we grant the Defendant's Motion for Summary Judgment.[1]

### II. *Factual and Procedural Background*

The Plaintiff began her employment with the Defendant in 1978, as a substitute bus driver, when she was 37 years old. On August 24, 1982, the Defendant hired the Plaintiff as a regular bus driver. The Defendant, whose boundaries encompass 1,800 square miles, is one of the largest school districts in the State of Minnesota. *Affidavit of Ronald Schuster*, at ¶ 2. Given its vast size, and a total student population of only 400 pupils, transportation costs per student are high. *Id.* The Defendant operates two schools in the District, one in Indus, Minnesota, and the other in Northome, Minnesota, at which the Plaintiff is employed.

The Plaintiff was first assigned the "Gemmell Route." *Deposition of Monica Kindred*, at pp. 22–23. Shortly after this assignment, and beginning with the 1984–85 school year, the Defendant hired Ron Schuster ("Schuster"), to be the District Superintendent. *Affidavit of Ronald Schuster*, at ¶ 1. According to the Plaintiff, Schuster commenced his "harassment" of her within a "year or so after he came [to the District]." *Deposition of Monica Kindred*, at p. 78.

In the fall of 1989, after driving the "Gemmell Route" for eight years, Schuster reassigned the Plaintiff to the "Forest Grove–

Mizpah Route." *Id.* at p. 23. This Route, which was "much shorter than the other routes in the School District," had recently become vacant when its driver retired. *Affidavit of Ronald Schuster*, at ¶ 8. The Defendant hired John Larsen ("Larsen"), who lived near the "Gemmell Route," to replace the Plaintiff. *Id.* at ¶ 9. According to Schuster, he assigned Larsen to the "Gemmell Route," in part as a cost savings measure, since Larsen could store a bus at his residence. *Id.* at ¶ 10.

In February of 1992, the School Board directed Schuster to make recommendations for reductions in programs and in positions throughout the District. *Id.* at ¶ 11; *Minutes of February 12, 1992 School Board Meeting*, attached as *Exhibit A, Affidavit of Ronald Schuster*. Contemporaneously, Lee Fraley, ("Fraley"), who was a bus driver for the District, informed the Defendant that he would resign at the end of the school year. Prior to his resignation, Fraley drove the "East Route." Because this route covered a greater territory than any of the other routes in the District—approximately 180 round trip miles—Fraley, as well as his two predecessors, received additional compensation for their efforts. *Id.* at ¶¶ 15–16. The "East Route" premium pay is reflected in the 1989–1991 Collective Bargaining Agreement (hereafter "Agreement"), which governed the terms and conditions of the Defendant's employees. *1989–1991 Collective Bargaining Agreement*, at Appendix A, attached as *Exhibit 6 to Deposition of Monica Kindred*. For an individual with the Plaintiff's seniority, the premium pay amounted to $228 per month. *Plaintiff's Memorandum in Opposition to Summary Judgment Motion*, at pp. 2–3.

On August 12, 1992, Schuster advised the School Board that, by eliminating the former "East Route," which cost the Defendant $26,500 to operate each year, and by reconfiguring three other routes, the Defendant could realize significant cost savings, in addition to reducing approximately 10,000 transportation

---

1. At the Hearing in this matter, the Plaintiff withdrew her claim that the Defendant had discriminated against her by denying waiting time pay and activity trips, and by subjecting her to different terms and conditions of employment than her younger, male coworkers. Consistent with this position, the Plaintiff did not address these claims in her Memorandum in response to the Defendant's Motion, nor do we consider those claims here.

miles. *Minutes of August 12, 1992 School Board Meeting,* attached as *Exhibit B, Affidavit of Ronald Schuster.* Prior to presenting his plan to the School Board, however, Schuster discussed his idea with the negotiating team of the Union, which included three regular school bus drivers. *Id.* at ¶ 18. The Union acceded to the proposed elimination of the "East Route," and the accompanying modification of the three other routes and, on April 15, 1992, the Union entered into a Collective Bargaining Agreement which, in contrast to the prior Agreement, reflected the absence of any "premium pay." *1991–93 Collective Bargaining Agreement, at Appendix A, attached as Exhibit 7 to Deposition of Monica Kindred.* On August 12, 1992, the School Board adopted Schuster's proposal. *Minutes of August 12, 1992 School Board Meeting,* attached as *Exhibit B, Affidavit of Ronald Schuster.*

On September 4, 1992, Schuster informed Kindred that he had assigned her to a new route—the "Wildwood–Mizpah Route"—which encompassed a portion of the former "East Route" and the "Mizpah" portion of the "Forest Grove–Mizpah Route" that the Plaintiff had previously operated. *Plaintiff's Memorandum in Opposition to Summary Judgment Motion,* at p. 12; *Affidavit of Ronald Schuster,* at ¶ 22. Larsen, who had previously assumed the Plaintiff's "Gemmell Route," was assigned the "Forest Grove" portion of the former "Forest Grove–Mizpah Route." *Id.* In addition, a route operated by another driver, Karen Adams, was altered so that she could pick up certain students who had previously ridden on the "East Route." *Id.* The remaining portion of the "East Route" was assumed by Maggert Transportation, which has served as the School District's contract driver since 1990. *Id.* at ¶ 24. According to the Plaintiff, Schuster informed her that she would not receive premium pay as a result of the assignment. *Declaration of Monica Kindred,* at ¶ 30.

After driving the "Wildwood–Mizpah Route" during the Fall of 1992, the Plaintiff addressed the premium pay issue with Chris Schaefer ("Schaefer"), a representative of the Union, who suggested that the Plaintiff make a formal request for additional compensation

to the School Board. *Plaintiff's Memorandum in Opposition to Summary Judgment Motion,* at p. 15. As a regular school bus driver for the Defendant, the Plaintiff's compensation was governed by the Agreement. In pertinent part, Article VII, Section 5 of the Agreement, provides as follows:

> Regular Bus Drivers will be paid a daily wage in accordance with Appendix "A". * * * A driver shall be paid for a minimum of two hours driving time. If a trip is less than two hours and the driver wants the minimum time, the driver will do regular maintenance in the Bus Garage to complete the two hours.

*1991–93 Collective Bargaining Agreement,* attached as *Exhibit 7 to Deposition of Monica Kindred.*

Thus, the salary set forth in the Agreement covered four hours of "driving time" per day, comprised of morning and afternoon trips of two hours each. Further, as we have noted, Appendix "A" to the 1991–93 Agreement recognized the elimination of the "East Route" and, accordingly, did not set forth additional compensation for that route. On December 9, 1992, the School Board tabled the Plaintiff's request for additional pay in order to allow time for an investigation. *Minutes of December 9, 1992 School Board Meeting,* attached as *Exhibit C, Affidavit of Ronald Schuster.* At that time, the Board became aware that a second driver in the District, Norma Ulrich ("Ulrich"), had also expressed concern as to the length of her route. *Id.*

In response to the Board's direction, Schuster commenced an investigation into the claims for additional pay by Ulrich and the Plaintiff. In conducting his investigation, Schuster asked the Principal of the Indus School to monitor the timing and mileage of Ulrich and, since Schuster was located at the Northome School, he conducted part of the investigation himself, which included monitoring the Plaintiff's starting and ending times. *Affidavit of Ronald Schuster,* at ¶ 31. In addition, Schuster asked Steve Goede ("Goede"), who is a bus mechanic and dispatcher for the Defendant, to inform him of the length of time that the Plaintiff took to complete her route. *Id.*

In January, the Plaintiff requested an opportunity to address the Board, and she was placed on the agenda for the meeting of February 10, 1993.. Prior to that meeting, Schaefer and Schuster agreed that the Plaintiff was not entitled to additional pay. On February 10, Schuster informed the Board that, after speaking with Schaefer, and after reviewing the information provided to him by Goede, he did not find any evidence to support the Plaintiff's request for additional pay. *Minutes of February 10, 1993 School Board Meeting*, attached as *Exhibit C Affidavit of Ronald Schuster*. By a vote of 5 to 1, the School Board denied the Plaintiff's request. *Id.* Just one month earlier, however, the School Board granted Ulrich's request for additional compensation. *Minutes of January 13, 1993 School Board Meeting*, attached as *Exhibit C, Affidavit of Ronald Schuster*. To date, the Plaintiff remains employed with the Defendant as a regular bus driver on the "Wildwood–Mizpah Route," and she is compensated no differently than she was during the 1992–93 school year.

On March 19, 1993, the Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged that she had been discriminated against on the basis of her age and her sex.

In that Complaint, the Plaintiff stated that her route had been changed, that she was "being denied extra pay for driving the extended bus route," that she was denied waiting time pay and activity trips, that she was verbally harassed and threatened with discipline by the School Superintendent, and that she was being subjected to different terms and conditions of employment than her younger, male coworkers. *Charge of Discrimination*, attached as *Exhibit 5, Declaration of Craig S. Davis*. She reported that the earliest discrimination occurred on September 4, 1992. *Id.* On August 21, 1995, the EEOC provided the Plaintiff with a "Right-to–Sue" letter.

Thereafter, on November 14, 1995, the Plaintiff commenced this action by the filing of a Complaint, in which she alleged that the Defendant had discriminated against her on the basis of her age, in violation of the Age Discrimination in Employment Act ("ADEA") *Title 29 U.S.C. § 621 et seq.*, and on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *Title 42 U.S.C. § 2000e–2(a)*. Following its filing of an Answer, the Defendant moved for Summary Judgment as to the entirety of the Plaintiff's Complaint.[2]

**2.** We briefly summarize our Standard of Review by noting that Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence and in rendering credibility determinations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue, and the Plaintiff has not identified any genuine issue of material fact which would preclude the entry of Summary Judgment. *Lower Brule Sioux Tribe v. State of South Dakota*, 104 F.3d 1017, 1021 (8th Cir.1997). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

As Rule 56(e), *Federal Rules of Civil Procedure*, makes clear, once the moving party files a prop-

erly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure*. Moreover, a defendant is entitled to Summary Judgment where a plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, supra at 322, 106 S.Ct. at 2552; *St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp.*, 968 F.2d 695, 699 (8th Cir.1992). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of [the Plaintiff's] case necessarily renders all other facts immaterial." *Id.*, at 323, 106 S.Ct. at 2552.

Lastly, "[b]ecause [employment] discrimination cases often turn on inferences rather than on direct evidence, [Courts] are particularly deferential to the non-moving party alleging discrimination." *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996); *Chock v. Northwest Airlines,*

## III. *Discussion*

The Plaintiff maintains that the Defendant discriminated against her by assigning her the "Wildwood–Mizpah Route," by failing to pay her additional compensation for that route, by creating a hostile work environment, and by retaliating against her for refusing to aid the District in defending against a former employee's discrimination claim. We consider her claims *seriatim.*

### A. *Assignment to New Route.*

1. *Standard of Review.* Under Title VII, it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex." *Title 42 U.S.C. § 2000e–2 (a).* In contrast, the ADEA makes it "unlawful for an employer * * * to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Title 29 U.S.C. § 623(a)(1).*

Where, as here, the Plaintiff has not offered any direct evidence of discrimination to support her claim, "we analyze the facts under the familiar burden-shifting framework set out by the *McDonnell Douglas* line of cases." [3] *Lang v. Star Herald,* 107 F.3d 1308, 1311 (8th Cir.1997), citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2746–48, 125 L.Ed.2d 407 (1993), *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 713—15, 103 S.Ct. 1478, 1480–82, 75 L.Ed.2d 403 (1983), *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981),

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). We apply the same analytical framework to the Plaintiff's ADEA and Title VII claims. *Berg v. Bruce,* 112 F.3d 322, 326–27 (8th Cir.1997), citing *Rothmeier v. Inv. Advisers, Inc.,* 85 F.3d 1328, 1332 n. 5 (8th Cir.1996) ("Although *McDonnell Douglas* is a Title VII case, the framework it establishes applies with equal force to claims under the ADEA.").

Under this framework, the Plaintiff must first have evidence that will establish a prima facie case. "While its elements will vary depending on the circumstances of the case, the fundamental purpose of the *prima facie* case is to require the plaintiff to show: (1) that an adverse employment action occurred, and (2) that the most common explanations for an adverse employment action, such as incompetence, are not applicable." *Hutson v. McDonnell Douglas,* 63 F.3d 771, 776 (8th Cir.1995). Generally, in presenting a *prima facie* case of discrimination, the Plaintiff must demonstrate (1) that she is a member of a protected class, (2) that she is qualified to receive the benefit in question, (3) that she was denied the benefit, and (4) that the action occurred in circumstances giving rise to an inference of discriminatory motivation. *Thomas v. Runyon,* 108 F.3d 957, 959 (8th Cir.1997), citing *Landon v. Northwest Airlines,* 72 F.3d 620, 624 (8th Cir.1995). "The plaintiff's burden of establishing a prima facie case serves, in part, to assure that the plaintiff has some competent proof that she was treated differently than similarly situated employees." *Lang v. Star Herald,* supra at 1312.

If the plaintiff successfully establishes a *prima facie* showing, then the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason

---

Inc., 113 F.3d 861, 862–63 (8th Cir. May 14, 1997). Nevertheless, while "summary judgment should seldom be granted in employment discrimination cases, if [the Plaintiff] fails to establish a factual dispute on each element of the *prima facie* case, summary judgment is appropriate." *Bialas v. Greyhound Lines, Inc.* 59 F.3d 759, 762 (8th Cir.1995), quoting *Weber v. American Express Co.,* 994 F.2d 513, 515–16 (8th Cir. 1993).

3. In this context, direct evidence "is evidence 'showing a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated'" the adverse action. *Thomas v. First National Bank of Wynne,* 111 F.3d 64, 65 (8th. Cir.1997), quoting *Philipp v. ANR Freight System, Inc.,* 61 F.3d 669, 673 (8th Cir.1995).

for its challenged decision. *McDonnell Douglas Corp. v. Green,* supra at 802, 93 S.Ct. at 1824; *Texas Department of Comm. Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *Stevens v. St. Louis Univ. Medical Ctr.,* 97 F.3d 268, 270–71 (8th Cir.1996); *Hutson v. McDonnell Douglas Corp.,* supra at 776 ("Once established, the *prima facie* case entitles the plaintiff to a rebuttable presumption that intentional discrimination played a role in the adverse employment action."). If the employer provides such a reason, then "the burden shifts back to the plaintiff to demonstrate that the reason provided was a pretext for discrimination." *Id.* at 777. However, should the employer be unable to provide such a reason for its decision, then the employee is entitled to a finding of intentional discrimination. *St. Mary's Honor Center v. Hicks,* supra at 510 n. 3, 113 S.Ct. at 2748 n. 3.

Once the employer advances a nondiscriminatory reason, then the Plaintiff "must show, in this summary judgment proceeding, that she has sufficient admissible evidence from which a rational factfinder could find that the [employer's] proffered nondiscriminatory reason was either untrue or not the real reason, and that intentional discrimination was the real reason." *Lang v. Star Herald,* supra at 1311; *St. Mary's Honor Center v. Hicks,* supra at 515, 113 S.Ct. at 2751–52 [emphasis in original] ("a reason cannot be proved to be 'a pretext *for discrimination'* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason"). Indeed, as our Court of Appeals recently observed, "evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of age discrimination." *Ryther v. KARE 11,* 108 F.3d 832, 837 (8th Cir.1997) (en banc). Under this burden-shifting approach, the plaintiff retains the ultimate burden of "demonstrating a genuine issue of fact as to whether the employer intentionally discriminated against [her] because of race [or age]." *Thomas v. Runyon,* supra at 960.

■ 2. *Legal Analysis.* Given these precepts, we conclude that the Plaintiff has failed to raise a material issue of fact that her assignment to the "Wildwood–Mizpah Route" constituted a materially adverse employment action, as she is required to do in order to demonstrate a *prima facie* case of discrimination. Accordingly, we grant Summary Judgment to the Defendant on the Plaintiff's reassignment claim.

■ In so concluding, we recognize that an employee need not be terminated as a precondition to suit. As the Seventh Circuit Court of Appeals explained, an actionable change in employment status might be created by "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat. Bank and Trust Co.,* 993 F.2d 132, 135 (7th Cir.1993). Nevertheless, "[c]hanges in duties or working conditions that cause no materially significant disadvantage * * * are insufficient to establish the adverse conduct required to make a prima facie case." *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994); *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996) (no adverse action where, after reassignment, employee received same rate of pay and benefits, and duties were not materially modified). Thus, where the challenged employment action "describes nothing 'more disruptive than a mere inconvenience or an alteration of job responsibilities,'" the employee has failed to make a *prima facie* case. *Harlston v. McDonnell Douglas Corp.,* supra at 382. As here, the plaintiff in *Harlston* was reassigned, but suffered no diminution in her title, salary, or benefits. The substance of her complaint was that the job to which she was reassigned involved fewer secretarial duties and was more stressful in that she had to watch the door, listen for the telefax, and be in charge of security for people entering and exiting the area. *Id.* Here, in addition to retaining the same title, salary, and benefits, the new route involved no change in the Plaintiff's duties or responsibilities. See, *McCabe v. Sharrett,* 12 F.3d 1558, 1564 (11th Cir.1994) (employee suffered adverse job action where she had fewer responsibilities,

was made to perform more menial tasks, and had lesser opportunity for salary increases in her new position.)

We understand that the Plaintiff does not like the Wildwood–Mizpah Route because it is longer than her previous route, and is more difficult to complete, in that it requires her to travel a more remote region of the District. However, the evidence demonstrates that the "driving time" is within the time period prescribed by the Agreement, and that, during the 1992–93 school year, of the seven routes in the District, which were driven by non-mechanics, two were longer. *Response to Interrogatory No. 16,* attached as *Exhibit C, Affidavit of Daniel J.S. Becker.* In our view, that the Plaintiff is no longer required to perform "regular maintenance" in the Bus Garage, so as to complete the minimum time requirements in the Collective Bargaining Agreement, or that she is required to drive a route she finds more stressful, are not materially adverse changes in the terms or conditions of her employment for purposes of establishing a violation of Title VII, or of the ADEA.

■ Even if the Plaintiff had shown that the assignment was materially, adverse and, therefore, had established a *prima facie* case, we would, nonetheless, conclude that she would be unable to counter the Defendant's legitimate nondiscriminatory reason for her reassignment. According to Schuster, the "East Route" was eliminated due to budgetary concerns, and the Plaintiff was assigned to the new "Wildwood–Mizpah Route" because "she was familiar with the Mizpah portion of the new route and because her former route was adjacent to the former East route." *Affidavit of Ron Schuster,* at ¶ 23. Since the Defendant has advanced a nondiscriminatory reason for its action, the burden shifts back to the Plaintiff to present evidence which could support a finding that the proffered reason was pretextual, and that intentional discrimination was the real reason for the Defendant's action. At this stage in the burden-shifting framework, "[o]ur determination is limited to whether the employer gave an honest nondiscriminatory explanation for its actions, rather than to weigh the wisdom of any particular employment decision." *Thomas v. Runyon,* supra at 960.

First, the Plaintiff asserts that the District's evidence of cost savings is pretextual. She disputes Schuster's averment that the transportation fund balance was in decline and, in support of that challenge, she cites an exhibit, which is attached to his Affidavit, that shows that the fund balance was at a five-year high in June of 1992. *Transportation Fund Balances,* attached as *Exhibit A, Affidavit of Ronald Schuster.* This exhibit, however, shows that the total balance represented a "transfer from unemployment," and that the unappropriated balance had declined from $113,808 to $19,065 in the five year period ending June 30, 1992. *Id.* Next, the Plaintiff contends that cost savings could not have been a reason for the District's elimination of the "East Route," since the District had recently approved the acquisition of a $350,000 building, and had recently purchased new busing equipment. While it may be true that the District incurred several large expenses during the same approximate time period, such evidence does not contradict the Defendant's assertion that the East Route was eliminated, in part, in order to secure potential cost savings. Further, our role is not to review the manner in which the District should choose to allocate its limited resources. Likewise, we are not persuaded by the Plaintiff's assertion that no cost savings were realized by the elimination of the "East Route," since the Defendant was obligated to pay an independent contractor almost $3,000 each month—and not merely $2,000 per year, as was represented by Schuster—in order to transport two students from the former "East Route." The Plaintiff's only evidence to support this assertion—minutes from School Board meetings showing successive monthly payments of $2,916 and $2,382—ignores that Maggert Transportation had served as the School District's contract driver since 1990, and therefore, had duties which were not limited to transporting the two students from the former "East Route." *Affidavit of Ronald Schuster* at ¶ 24.

The Plaintiff also disputes the Defendant's contention that she was chosen to operate

the "Wildwood–Mizpah Route" because of her familiarity with that route. She argues that other employees were more familiar with the area surrounding the new route, were operating routes which were adjacent to the new route, and "could have driven the East Route more efficiently than [her]." *Plaintiff's Memorandum in Opposition to Summary Judgment Motion,* at p. 31. However, during her deposition, the Plaintiff admitted that her new Route contained portions of two of her former routes, and nowhere has she controverted Schuster's averment that her previous route was adjacent to the former "East Route." *Deposition of Monica Kindred,* at pp. 132–33. Further, we note that "[t]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or the fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Brown v. McDonnell Douglas Corp.,* 113 F.3d 139, 141–42 (8th Cir.1997), quoting *Hutson v. McDonnell Douglas Corp.,* supra at 781. Accordingly, we find that the Plaintiff has failed to present sufficient admissible evidence from which a rational factfinder could find that the Defendant's proffered nondiscriminatory reason for eliminating the "East Route," and then assigning the Plaintiff to the new "Wildwood–Mizpah Route," were untrue.

### B. *Refusal to Pay Additional Compensation.*

■ 1. *Standard of Review.* "Where, as here, the plaintiff raises a claim of unequal pay for equal work on the basis of sex, the standards are the same whether the plaintiff proceeds under Title VII or the Equal Pay Act." *EEOC v. Cherry–Burrell Corp.,* 35 F.3d 356, 360 (8th Cir.1994), quoting *EEOC v. Delight Wholesale Co.,* 973 F.2d 664, 669 (8th Cir.1992), in turn quoting *McKee v. Bi–State Dev. Agency,* 801 F.2d 1014, 1019 (8th Cir. 1986). "The plaintiff must prove that the

employer pays different wages to employees of opposite sexes for 'equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Id.,* quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974).[4] The Equal Pay Act does not mandate that the jobs be identical; rather, it requires that they be substantially equal. *Horner v. Mary Institute,* 613 F.2d 706, 713 (8th Cir.1980).

■ 2. *Legal Analysis.* Here, the Plaintiff asserts that the three previous drivers on the former "East Route" received premium pay, while she was denied additional compensation when she assumed a portion of that route. Since she argues that this difference was the product of illegal wage discrimination, her unequal pay claim is grounded upon an initial assumption that her position as a driver on the "Wildwood–Mizpah Route," involved "'equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *EEOC v. Delight Wholesale Co.,* supra at 669. However, upon our close review, we disagree with this assumption, since we conclude that the Plaintiff has failed to present a *prima facie* showing of wage discrimination and, as a result, the Defendant's Motion for Summary Judgment, on the unequal pay claim, should be granted.

The "equal work for unequal pay" scenario involves a situation in which both the plaintiff and a male coworker performed, in essence, substantially equal work, but where the male employee has received a higher rate of pay. See, e.g., *EEOC v. Cherry–Burrell Corp.,* supra at 358–59 (female plaintiff as only junior buyer, performed "substantially similar duties" as male buyers, but for less pay); *EEOC v. Delight Wholesale Co.,* supra at 667 (plaintiff demoted and replaced by male worker who performed same work for higher pay). However, this prerequisite for recov-

---

**4.** The Equal Pay Act prohibits an employer from discriminating "between employees on the basis of sex by paying wages to employees * * * at a rate less than the rate at which he pays wages to employees of the opposite sex * * * for equal

work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Title 29 U.S.C. § 206(d).*

ery is not presented here, for the uncontroverted Record demonstrates that the former "East Route," and the "Wildwood–Mizpah Route," are materially different. Indeed, during the 1992–93 school year, the route operated by the Plaintiff was 122 round trip miles, which is a significantly shorter distance than the former East Route, which was 180 round trip miles. *Response to Interrogatory No. 16,* attached as *Exhibit C, Affidavit of Daniel J.S. Becker; Affidavit of Ronald Schuster,* ¶ 26.

██ Having concluded that the Plaintiff has failed to show "unequal pay for equal work," so as to give rise to a claim of wage discrimination, we turn to the Plaintiff's related contention that the denial of her request for premium pay was a discriminatory act that was prompted by her age and gender. On this score, we conclude that the Plaintiff has failed to present evidence that is sufficient to create a genuine issue of material fact that her request was denied because of any discriminatory animus on the part of the Defendant.

██ As we have noted, the Plaintiff's compensation, as a regular bus driver, was governed by the Agreement, which sets forth payment for "two hours driving time" each morning and afternoon—that is, four hours of driving time per day. After permitting time for an investigation into her claim, the Board considered the presentations of Schuster, who argued against additional pay, and the Plaintiff. In opposing this Motion, the Plaintiff asserts that the investigation was "a cover-up, a mere pretext." *Plaintiff's Memorandum in Opposition to Summary Judgment Motion,* at p. 26. Reduced to its essentials, however, the Plaintiff's contention is simply that the Board should have rejected Schuster's presentation, and accepted her request. Of course, our role is not to "weigh the wisdom of any particular employment decision," and we may not find unlawful discrimination merely because we think the employer's decision was unwise. *Brown v. McDonnell Douglas Corp.,* supra at 141–42, quoting *Ruby v. Springfield R–12 Pub. Sch. Dist.,* 76 F.3d 909, 912 n. 7 (8th Cir.1996).

The Plaintiff underscores that the notes, which were prepared by Goede at the request of Schuster, and which Schuster provided to the Board, reflect that she arrived for work at 6:15 a.m., warmed up the bus for ten minutes, and left school at 6:25 a.m. *Notes prepared by Steven Goede,* attached as *Exhibit C, Affidavit of Ronald Schuster.* Since "[n]ormal return time with students was 8:25 a.m.," the Plaintiff argues that Goede's calculations suggest that she was "ten minutes over the four hour fictional work time." *Plaintiff's Memorandum in Opposition to Summary Judgment Motion,* at p. 16. However, not only does Goede's notation reflect "two hours driving time," but Goede testified at his deposition that, "as far as leaving school and returning, I know I wasn't there to observe it." *Deposition of Steven Goede,* at page 20. Rather, Goede stated that he "probably just asked [the Plaintiff] what time she was leaving in the morning and what time she was getting back in the afternoon." *Id.* In contrast, Schuster states that he was frequently at the Northome site when the buses arrived and departed, and he observed that the Plaintiff's route was being completed within the four hours allowed in the collective bargaining agreement. *Affidavit of Ronald Schuster,* at ¶¶ 31–32. While we recognize that the Plaintiff disputes Schuster's calculation, we also note that she could have taken his deposition, but she elected not to do so. See, *Thomas v. Runyon,* supra at 961 ("if plaintiff was not content with the record, he could have taken [supervisor's] deposition").

Moreover, even if the Plaintiff could show that the Board was mistaken when it concluded that the "Wildwood–Mizpah Route" should entail no more than fours of daily "driving time," she has wholly failed to show that "intentional discrimination was the real reason" for the Board's action. *St. Mary's Honor Center v. Hicks,* supra at 515, 113 S.Ct. at 2751. Although not cited in the Plaintiff's Memorandum, we are mindful that Goede testified that, on one occasion, Schuster made a comment to him that "was just something to the effect that maybe women can't handle taking care of the kids on the bus." *Deposition of Steven Goede,* at pp. 36–37. Standing alone, however, this isolated comment, without evidence of context or

date—neither of which Goede could supply—is insufficient to create a material issue of fact that discrimination was "the real reason" that the Board denied her request. See, e.g., *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991).

Also supportive of our conclusion—that the Plaintiff has failed to demonstrate an issue of fact that the Board was motivated by discriminatory animus when it denied her request—is the fact that the Board granted, at approximately the same time, the only other request for additional pay. Significantly, this driver, who was Ulrich, was not only female, but she was also six years older than the Plaintiff. *Response to Interrogatory No. 16,* attached as *Exhibit C, Affidavit of Daniel J.S. Becker.* The Board concluded that Ulrich could not complete her route, which was over 140 miles round trip, in the time allotted in the Agreement. The Plaintiff's attempt to show that the Defendant's payment to Ulrich "[wa]s not evidence of good will towards women," because her husband is employed by the Defendant, is not only nonsensical, but it ignores the fact that the Plaintiff's husband is also a full-time employee of the District. *Plaintiff's Memorandum in Opposition to Summary Judgment Motion,* at p. 27; *Declaration of Merle Eugene Kindred,* ¶¶ 2–4.

### C. *Hostile Work Environment.*[5]

1. *Standard of Review.* "Title VII has been interpreted to provide a cause of action for discrimination '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Smith v. St. Louis University,* 109 F.3d 1261, 1264 (8th Cir. 1997), quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). In order to state a claim for sex discrimination, that is based upon a hostile environment, a plaintiff must show that (1) she belongs to a protected group; (2)

she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [the employer] knew or should have known of the harassment and failed to take proper remedial action. *Quick v. Donaldson,* 90 F.3d 1372 (8th Cir.1996).

While offensive comments alone may not create a hostile work environment, a plaintiff need not show that they "cause[d] a tangible psychological injury" to succeed on her claim. *Harris v. Forklift Sys., Inc.,* supra at 21, 114 S.Ct. at 370. Nevertheless, in order to establish an objectively hostile working environment, the offending conduct must have been sufficiently severe or pervasive, and "more than a few isolated incidents are required." *Kimzey v. Wal–Mart Stores, Inc.,* 107 F.3d 568, 573 (8th Cir.1997), quoting *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). There is no "mathematically precise test" to determine whether an environment is "hostile" or "abusive" under Title VII. *Harris v. Forklift Sys., Inc.,* supra at 22–23, 114 S.Ct. at 370–71. Rather, a Court must look to the totality of the circumstances in order to determine whether the alleged conduct was sufficiently pervasive to create a hostile environment.

2. *Legal Analysis.* With these standards as our guide, we conclude that the Plaintiff has failed to demonstrate, either directly or inferentially, that she was subjected to unwelcome sexual harassment which affected a term or condition of her employment. Accordingly, we grant Summary Judgment to the Defendant on the Plaintiff's hostile environment claim.

Here, the Plaintiff neither asserts, nor has she presented any evidence, that the "harassment" of which she complains was in any way based upon her sex. To support her claim of harassment, the Plaintiff asserts that Schuster "often glared out the window" at her, that

---

**5.** As to her hostile environment claim, the Plaintiff appears to limit her allegations to gender, for she argues that the Defendant violated Title VII. Nevertheless, to the extent the Plaintiff has raised a hostile environment claim based on age discrimination, we reject that claim, as a matter of law, for she has entirely failed to present any evidence that the conduct, which she has perceived as harassment, was based on her age.

he "berated" her in his office before she was to drive her afternoon route, and that he went outside the chain of command to supervise her, since Goede was her direct supervisor. *Plaintiff's Memorandum in Opposition to Summary Judgment Motion,* at p. 18. However, the Plaintiff has acknowledged that her main objection to Schuster's conversations with her was one of timing, since she understood that Schuster's responsibilities included relaying parent complaints to her, together with concerns that the students had raised with him concerning the bus routes. *Deposition of Monica Kindred,* at p. 39. Moreover, as to supervision, Schuster testified that he frequently involved himself in the hiring of transportation employees and the monitoring of their performance, and that, on occasion, he would ride with the bus drivers on their assigned routes, both to establish a presence with the students and their parents, and to learn where the students lived. *Affidavit of Ronald Schuster,* at ¶ 28. Lastly, as to "glaring," the Plaintiff testified that Schuster would "glare" at all the bus drivers, both male and female, when they returned from their routes. *Deposition of Monica Kindred,* at p. 45.

The Plaintiff relies on *Kopp v. Samaritan Health Sys.,* 13 F.3d 264, 269–70 (8th Cir. 1993), as a basis to argue that, standing alone, "abusive, or unusually close supervision, criticism, or reprimands," can give rise to an actionable claim of harassment. We think, however, that the Plaintiff's reliance on *Kopp* is misplaced. In *Kopp,* our Court of Appeals found sufficient evidence of actionable harassment, notwithstanding that the abuse was rarely couched in terms of sex or gender, and never was it sexually explicit. Unlike the circumstances here, however, the plaintiff in *Kopp* presented evidence that women were more frequently the objects of the supervisor's derision. As the Court explained, "the key issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 269. Thus, while evidence that members of one sex were the primary targets of

the harassment may be sufficient to show that the conduct was gender based, the Plaintiff has presented no such evidence in this case. Indeed, when asked whether she thought that Schuster's conduct "was harassment based on [her] sex," the Plaintiff responded: "I just think it was just plain old harassment, just something to make me mad." *Deposition of Monica Kindred,* at p. 234.

We do not doubt the sincerity with which the Plaintiff believes that Schuster did not like her. Nevertheless, there is an absence of evidence that his dislike was related to her gender. In this respect, the Plaintiff has admitted that she had no idea if Schuster disliked her because she was female. *Id.* at p. 211. Further, there is simply no dispute that the conduct, which the Plaintiff has perceived as harassment, was not particularly severe or degrading. Finally, and relatedly, the Plaintiff has not produced any evidence tending to show that the "harassment" interfered with her work performance or created an objectively intimidating, hostile, or offensive work environment.

### D. Retaliation.

*1. Standard of Review.* To establish a prima facie case of retaliation, "a plaintiff must show (1) statutorily protected participation [in Title VII or ADEA processes]; (2) adverse employment action; and (3) a causal connection between the two." *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 497 (8th Cir.1995), quoting *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981)

*2. Legal Analysis.* In her opposition to the Defendant's Motion for Summary Judgment, the Plaintiff, for the first time, asserts, as the sole basis for the claimed retaliation, that the Defendant retaliated against her for "reluctantly talking to Mr. Schuster about Jim Diamond," who had earlier filed a claim against the Defendant alleging age discrimination.[6] *Plaintiff's*

6. In her Charge of Discrimination, the Plaintiff merely checked the box relating to "retaliation," and failed to provide any particular information

relating to a reprisal claim. *Charge of Discrimination,* attached as *Exhibit 5, Declaration of Craig S. Davis.* Likewise, her complaint baldly

*Memorandum in Opposition to Summary Judgment Motion,* at p. 34. The Plaintiff appears to contend that the District retaliated against her for failing to provide information to use against Diamond. In contrast, the Plaintiff testified at her deposition that her retaliation claim related to the filing of her own charge of discrimination. *Deposition of Monica Kindred,* at p. 188. Indeed, the Plaintiff stated that "Jim Diamond's situation had nothing to do with [her] filing [her] charge." *Id.* at p. 209. Consistent with this position, the Plaintiff represented to the Court, on May 20, 1996, that her retaliation related solely to "her complaints." See, *Plaintiff's Pretrial Conference Statement* ("She also believes she has been harassed and retaliated against due to having filed an EEOC charge, and this lawsuit.") Since claims that are not the subject of an EEOC charge are not within the jurisdiction of the Court, *Smith v. Office of Economic Opportunity,* 538 F.2d 226, 228 (8th Cir.1976), it follows that claims raised for the first time in response to a Motion for Summary Judgment are not properly before the Court. We, therefore, grant Summary Judgment to the Defendant on the Plaintiff's retaliation claim.

NOW, THEREFORE, It is—

ORDERED:

That the Defendant's Motion for Summary Judgment [Docket No. 23] is GRANTED.

asserted "[d]iscrimination based on sex, age, & retaliation" and, in support thereof, she attached a copy of her Charge of Discrimination.