# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

_____

\*
\*
\*

\*
\*
\*
\*

Defendants/Appellees.

\*
\*

Submitted: Oct. 20, 1998

_____

_____

Jeremy Nelson

arrest him following his flight from t

and                                                                                    and Minnesota

t                                                                                              h

ommitted an unjustified battery and that the county should be

vicariously liable for the battery. The district court[1] granted summary judgment to the defendants, and Nelson appeals. We affirm.

Nelson was committed to Willmar as chemically dependent and mentally ill in October 1994. Later that month he left the center without permission and returned to his mother's house in Monticello. When he was found missing, a pickup order was issued and his mother was notified. Nelson's mother nevertheless allowed him to stay with her while he was waiting to meet with his attorney. After three days, they got into an argument. Nelson became agitated, and his mother called 911 to request assistance. She reported that Nelson was screaming at her and threatening suicide. She also told the operator about the treatment center pickup order. While his mother was on the phone, Nelson ingested approximately eighteen white cross tablets and a half bottle of aspirin. The record indicates that at the time Nelson was eighteen years old and 6'3" in height; he weighed 140 pounds.

The county dispatcher identified the call as a domestic disturbance, and Deputy Hudek was the first officer to respond. The dispatcher indicated that Nelson had been acting violently, that he was believed to be suicidal, and that he had fled from a regional treatment center for mental illness and chemical dependency. When Hudek arrived at the house, he spoke with Nelson's mother and learned that her son had just taken the pills, that he was in his bedroom, and that he did not have any weapons.

Hudek went into the bedroom and found Nelson lying on the bed. The deputy explained that he needed to arrest Nelson and to handcuff him, but Nelson resisted when he tried to cuff his hands behind his back. Nelson struggled with Hudek as the deputy attempted to gain control over his arms, and Hudek applied his asp as an arm bar. At some point in the continuing struggle, Hudek hit Nelson on the head with the

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

asp and Nelson reached for the deputy's gun. The parties disagree about which happened first, but Nelson admits that he reached for Hudek's gun early in the struggle and that he also hit the deputy repeatedly, kicked him in the chest, and knocked him down twice, finally pushing him onto the floor of a closet.[2] Hudek admits striking Nelson on the head with his asp several times in an attempt to control him. Nelson admits that he went down after Hudek while the deputy was on the closet floor; he says he lost his balance. Hudek fired two shots from the closet floor; the second hit Nelson in the chest.

The entire incident lasted less than three minutes and was over by the time other officers arrived. Nelson was taken to the hospital where seven staples were used to close a head wound; the bullet remains in his back. Nelson was charged with assaulting an officer and pled guilty under North Carolina v. Alford, 400 U.S. 25 (1970) (court can accept a guilty plea despite claim of innocence if there is strong evidence of actual guilt.) His plea agreement provided that a charge of obstructing legal process would be dropped in return for his plea on the assault charge and that he would be sentenced to time served (94 days).

Nelson subsequently brought this civil action against Hudek and the county, and the district court granted summary judgment for the defendants. The § 1983 claim was dismissed for insufficient evidence that Hudek's actions were objectively unreasonable. The court also concluded that Hudek was entitled to official immunity on the battery claim under state law and that Nelson could therefore not assert vicarious liability against the county.

---

[2]In reviewing this grant of summary judgment, we accept Nelson's version of the facts and have not recounted all the conflicting testimony of Deputy Hudek, including his claims that Nelson reached for his gun and unsnapped its holster before he hit him on the head with the asp and that Nelson again attempted to get his gun after he was knocked onto the closet floor.

Nelson argues on appeal that both claims were improperly dismissed. He argues Deputy Hudek is not entitled to qualified immunity on his constitutional claim for excessive force and that there are genuine issues of material fact. Appellees disagree and also argue that Nelson is barred from bringing this claim because of his conviction for assaulting Deputy Hudek, citing Heck v. Humphrey, 512 U.S. 477 (1994).[3] Nelson also argues that the district court erred in granting Hudek official immunity under Minnesota law and dismissing the battery claim. Appellees respond that Hudek is immune because he did not commit a willful or malicious wrong.

A district court's grant of summary judgment is reviewed de novo. Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir. 1997). The decision should be affirmed if, "viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. at 1227-28 (citation and internal punctuation omitted). Summary judgment is not appropriate if the nonmoving party can set forth specific facts, by affidavit, depositions, or otherwise, showing the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Government officials performing discretionary tasks are entitled to qualified immunity unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Anderson v. Creighton, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable . . . generally turns on the 'objective' legal reasonableness of the action . . . assessed in light of legal rules that were clearly established at the time it was taken."); Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The applicability of qualified

---

[3]The district court did not reach this question, and we need not address it because of our resolution of other issues.

immunity is a question of law, Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992), which should be decided at the "earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Excessive force claims arising from arrests are analyzed under the Fourth Amendment, Graham v. Connor, 490 U.S. 386, 394 (1989), and the use of force is not constitutionally excessive if the "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Id. at 397. In applying this objective reasonableness standard, a court must pay close attention to the particular facts. It should consider such factors as the severity of a suspected crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting or evading arrest. Graham, 490 U.S. at 396. It may also be appropriate to consider the extent of any injury sustained by the suspect, Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990), and standard police procedures, Ludwig v. Anderson, 54 F.3d 465, 472 (8th Cir. 1995). As the Supreme Court has noted, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397. Critical decisions regarding the use of force often must be made without much time for reflection. The issue of reasonableness must be examined from the perspective of the facts known to the officer at the time of the incident. Schulz v. Long, 44 F.3d 643, 648 (8th Cir. 1995). Deadly force is justified if the totality of the circumstances gives the officer "probable cause to believe that the [arrestee] poses a threat of serious physical harm, either to the officer or others." Tennessee v. Garner, 471 U.S. 1, 11 (1985).

The parties agree that either shooting someone or striking him on the head with an asp can be an application of deadly force, but they disagree on whether Hudek's

actions were objectively reasonable.[4]  A reasonable police officer would have known in October 1994 that no greater force should be used in making an arrest than was reasonable under the circumstances and that deadly force would not be justified unless there was probable cause to believe he was faced with a threat of serious physical harm.  The standard was clearly established.[5]  Whether Hudek is entitled to qualified immunity must be examined from the perspective of the situation as he understood it at the time.  Anderson v. Creighton, 483 U.S. 635, 640-41 (1987).

It is undisputed that the entire encounter between Hudek and Nelson lasted less than three minutes and that it escalated rapidly.  Hudek could have reasonably believed his safety was threatened as the situation spun out of control.  When Hudek went into Nelson's room, he knew that Nelson had previously been committed to Willmar, had been acting violent and suicidal, and had taken a number of pills.  Hudek initially attempted to arrest and cuff Nelson without using force.  Nelson actively resisted.  A reasonable officer would have known that force may be used to overcome resistance to arrest, Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990), and that an officer may use deadly force when threatened with serious physical

---

[4]At oral argument counsel for Nelson stated that even if the gun shots were justified as a matter of law, material questions of fact would remain regarding the reasonableness of the use of the asp.

[5]Appellees argue, and the district court agreed, that the standard for determining qualified immunity is identical to the standard for deciding if the use of force was excessive.  Both involve considerations of objective reasonableness.  The Supreme Court expressly declined to comment in Graham on the application of qualified immunity in excessive force cases because the defense had not been raised.  490 U.S. at 399 n.12.  Since we conclude Hudek is entitled to qualified immunity, we need not analyze whether there is any conceptual difference in the standards.  In any event, after reviewing the record from Nelson's point of view, we conclude no rational jury could find that Hudek's actions were objectively unreasonable in light of the evolving circumstances.  Nelson has made an insufficient showing to succeed on his excessive force claim.

harm. Garner, 471 U.S. at 11. Nelson's hostility and increasingly violent reaction gave Hudek reason to fear grave personal injury. It is not disputed that during the struggle, Nelson reached for Hudek's gun and shoved Hudek onto the floor and into the closet. Even when the facts are viewed in the light most favorable to Nelson, it is clear that the physical fight was intense and that there would have been little time for the officer to reflect as the situation quickly escalated. Nelson now tries to analyze the brief struggle as if the incident were composed of distinct and separate segments. At the time, however, it was uncertain what would happen next. The situation was tense and "rapidly evolving." Graham, 490 U.S. at 397. An "officer's actions are not to be assessed with 20/20 hindsight" when he was faced with the need to make instantaneous decisions. Salim v. Proulx, 93 F.3d 86, 91 (2nd Cir. 1996). After carefully reviewing the record, we conclude that under the circumstances encountered by Hudek, a reasonable officer could have believed that the use of potentially deadly force was not excessive or in violation of the clearly established law requiring an objectively reasonable response. Hudek is thus entitled to qualified immunity. See id. at 91-92.

Nelson also challenges the district court's conclusion that Hudek is immune from suit on the state law battery charge. To qualify for official immunity under Minnesota law, the public official must be "charged by law with duties which call for the exercise of his judgment or discretion" and not be "guilty of a willful or malicious wrong." Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988) (citations and internal punctuation omitted). Police officers are generally classified as discretionary officers who may be entitled to official immunity. Johnson v. Morris, 453 N.W.2d 31, 42 (Minn. 1990). The key issue here is whether, viewing the facts in the light most favorable to Nelson, Hudek committed a willful or malicious wrong.

The Minnesota Supreme Court has indicated that willful and malicious are synonymous in the official immunity context and mean "nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Rico v. State, 472 N.W.2d 100, 107

(Minn. 1991) (citations and footnote omitted).  This is a subjective standard, in contrast to the objective qualified immunity standard.  See Elwood, 423 N.W.2d at 676-79 (declining to follow federal precedent which eliminated the subjective good faith component for immunity).  Nelson has not produced any evidence to suggest that Hudek did not believe that his personal safety was in jeopardy or that he intended to violate Nelson's rights.  On the basis of this record, Hudek is entitled to official immunity under state law and the county is relieved of any potential vicarious liability.  See, e.g., Kari v. City of Maplewood, 582 N.W.2d 921 (Minn. 1998).

For these reasons, the judgment is affirmed.


A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.