# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4138SD

_____

Clyde M. Lawson,      *
             *
 Plaintiff/Appellee    *
             * Appeal from the United States
v.            * District Court for the
             * District of South Dakota
Andrew Hulm and Darron Hanzlik, *
Individually and in their Official  *   **TO BE PUBLISHED**
Capacities as State Troopers,   *
             *
 Defendants/Appellants.   *

_____

Submitted:  June 13, 2000
Filed: August 18, 2000

_____

Before LOKEN and BRIGHT, Circuit Judges, and HAND,[1] District Judge.

_____

PER CURIAM

Andrew Hulm and Darron Hanzlik, Troopers with the South Dakota Highway Patrol, appeal the district court's denial of their motion for summary judgment. We conclude that the Troopers were entitled to qualified immunity in this case. We therefore reverse and remand for the entry of such judgment.

_____

[1] The HONORABLE WILLIAM BREVARD HAND, United States District Court for the Southern District of Alabama, sitting by designation.

This action involves an incident which occurred on April 10, 1998, at around noon, on a sidewalk in front of B.B. Cody's Restaurant in Deadwood, South Dakota. Clyde Lawson was employed by a gaming establishment located next door to B.B. Cody's. On the day in question, a co-employee had brought a chicken to share for lunch but there was no suitable knife on the premises to cut up the chicken. Lawson went to B.B. Cody's and borrowed a small knife which was approximately six inches long including its four inch handle. Lawson exited B.B. Cody's with his arms at his side and the knife concealed in the palm of his right hand.

At the same time Lawson exited B.B. Cody's, three uniformed Troopers with the highway patrol were leaving the same restaurant where they had been eating lunch. The first to exit was Trooper Troy Boone who had a drug dog with him. Lawson contends that the dog caught his attention and he approached Boone to talk with him. Boone did not see the knife Lawson was carrying but backed away as Lawson walked toward him. Lawson concedes that Boone retreated and surmises that it was because he was invading Boone's personal space.

Troopers Hulm and Hanzlik exited B.B. Cody's about a minute after Trooper Boone. Trooper Hanzlik observed Lawson talking to Trooper Boone. Lawson was not known to any of the Troopers. Troopers Hulm and Hanzlik both observed the knife in Lawson's hand and Trooper Boone backing away from Lawson. Boone's arms were crossed in a defensive position. It appeared to Troopers Hulm and Hanzlik that Lawson was attempting to conceal the knife. In Trooper Hanzlik's opinion, it presented a dangerous and threatening situation and reminded him of another trooper who's throat had been cut a few years back. In Trooper Hulm's opinion, Lawson was having a confrontation with Trooper Boone.

Troopers Hulm and Hanslik tried to stay in a position behind Lawson where they would not be noticed by Lawson and could get Trooper Boone's attention to warn him of the knife so that he could get out of Lawson's reach. Trooper Hulm made eye

contact with Trooper Boone and pointed down towards the knife in Lawson's hand. Trooper Hulm came up behind Lawson and told him to drop the knife. Lawson contends that he immediately dropped the knife while the Troopers contend that Lawson first turned towards them at which point Trooper Hanzlik grabbed Lawson's left arm and Hulm grabbed Lawson's right wrist. According to the Troopers, they disarmed Lawson and handcuffed him with his hands behind his back. Although Lawson contends that the amount of force used in placing his hands and body in a position to be handcuffed was excessive because he contends he never struggled with the Troopers, he never disputes that the entire incident lasted only 30 to 45 seconds and that the Troopers had probable cause to believe that Trooper Boone was in danger under the circumstances. Lawson further contends that one of the Troopers pushed his head down while grabbing his left arm and positioning it behind his back and that he was pulled down the sidewalk and slammed into an adjoining building during the handcuffing process. Lawson conceded that, after he was frisked and after a brief investigation, he was immediately released from the handcuffs and not charged with any crime. Although Lawson contends that he went to the emergency room the next day with neck, shoulder and back pain and was prescribed pain medication and muscle relaxant, he also asserts that he never had the prescriptions filled and continued to work at his job, including all required lifting, for some months. It was not until March 1999 that Lawson was declared by a treating physician to be unable to perform his job. Lawson was diagnosed with a torn rotator cuff in his right shoulder in May of 1999, almost one year following the incident at issue in this litigation.[2]

We review *de novo* the legal issue relating to the existence of qualified immunity. *Guite v. Wright*, 147 F.3d 747, 749 (8th Cir. 1998). The district court correctly

[2] The diagnosis in May 1999 of a torn rotator cuff is too remote in time and not sufficiently connected to the incident or the more contemporaneous emergency room evaluation which was submitted by Lawson as the only other evidence of alleged physical injury.

identified the applicable qualified immunity standard and analysis but erred in its conclusion that those facts disputed by the parties were material and precluded summary judgment in favor of the Troopers on their immunity claim. Particularly applicable to this case is the principle that "[s]ummary judgment is appropriate against a party who has the burden of proof at trial and has failed to make a sufficient showing to establish the existence of an element essential to h[is] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Mayard v. Hopwood*, 105 F.3d 1226, 1228 (8th Cir. 1997).

As recently emphasized by this court, a motion for summary judgment on qualified immunity grounds is only precluded when the plaintiff has "(1) assert[ed] a violation of a constitutional right; (2) demonstrate[d] that the alleged right is clearly established; and (3) raise[d] a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right." *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999), *quoting, Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.), *cert. denied*, 519 U.S. 1011, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996). Lawson contends only that the Troopers violated his constitutional right to be free from excessive force. Although there can be no question that the Fourth Amendment prohibits unreasonable seizures of the person, it is also well established that "not every push or shove violates the Fourth Amendment." *Guite*, 147 F.3d at 750, *citing, Graham v. Conner*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). The applicable test is "whether the force used to effect a particular seizure is 'reasonable'." *Id.* In the context of a claim of excessive force, the 'reasonableness' inquiry must be an objective one in that the court must only evaluate "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Guite*, 147 F.3d at 750, *citing, Graham*, 490 U.S. at 397, 109 S.Ct. at 1872. It is also important to recognize that:

The " 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872; *Krueger* [*v. Fuhr*], 991 F.2d [435,] at 439 [(8th Cir. 1993)]. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. at 1872.

*Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993).

Upon consideration of the record in this action, we must hold that Troopers Hulm and Hanzlik could reasonably have believed that Lawson was concealing a weapon capable of harming Trooper Boone and that Trooper Boone's life was in imminent danger. Lawson concedes as much. Consequently, it is not constitutionally unreasonable for Troopers Hulm and Hanzlik to have prevented that harm by seizing, disarming and restraining Lawson, even if such actions had been taken without warning to Lawson and even in the absence of any resistance by Lawson. No reasonable and competent law enforcement officer could conclude that the actions taken by Troopers Hulm and Hanzlik against Lawson under these circumstances were excessive or otherwise unlawful. There exists no other issue of fact material to the appellants' entitlement to immunity in this case. Summary judgment should have been granted.

Accordingly, we reverse the district court's order denying the defendant's motion for summary judgment on qualified immunity grounds. The case is remanded with instructions that summary judgment be entered in favor of Troopers Andrew Hulm and Darron Hanzlik.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.