# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4047

_____

Adam Moore,                                  *
                                             *
                Appellant,                   *
                                             *  Appeal from the United States
        v.                                   *  District Court for the
                                             *  District of Minnesota.
Kurt Indehar, in his individual              *
capacity,                                    *
                                             *
                Appellee.                    *

_____

Submitted:  June 14, 2007
    Filed:  February 1, 2008

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Adam Moore appeals from the district court's decision to grant Officer Kurt Indehar's motion for summary judgment based on qualified immunity. We reverse the grant of summary judgment and remand the matter to the district court for further consideration.

I.

Moore argues on appeal that the district court failed to construe the facts of the case in the light most favorable to him, the non-moving party. When bringing a

summary judgment motion, the moving party is required to present "the pleadings, the discovery and disclosure materials on file, and any affidavits [which] show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The adverse party "may not rely merely on allegations or denials in its own pleading," rather the adverse, or non-moving, party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Initially and on appeal, the courts are obligated to construe the "record in the light most favorable to the non-moving party . . . and . . . afford him all reasonable inferences to be drawn from that record." Davis v. Hall, 375 F.3d 703, 711 (8th Cir. 2004). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." Scott v. Harris, 127 S. Ct. 1769, 1775 (2007). However, in construing the record, the "court may consider only the portion of the submitted materials that is admissible or useable at trial." Walker v. Wayne County, 850 F.2d 433, 434 (8th Cir. 1988). On appeal, "[w]e review the district court's grant of summary judgment de novo, applying the same standards as the district court." Grayson v. Ross, 454 F.3d 802, 808 (8th Cir. 2006). With this charge, we recite the facts of this case, construed in the light most favorable to Moore.

At approximately 7:00 p.m. on March 23, 2003, Moore and several others, including Rufus Loyd, were "hanging out" in a parking lot behind a convenience store near the intersections of Lowry and Lyndale Avenues in North Minneapolis, Minnesota, when an occupant in a car traveling eastbound on Lowry Avenue fired five to seven shots in the direction of the group. Though Moore attempted to run, he tripped and fell to the ground. After the car passed, Moore ran to the corner of a building to see if he could identify the car, and Loyd stepped out into the street, pulled a pistol, and fired two or three shots towards the fleeing car. Moore was not armed at that time.

At that same time, Officers Peter Hafstad and Kurt Indehar were traveling in a marked Minneapolis Police Department patrol car northbound on Lyndale Avenue to

answer an unrelated call. When they heard the shots being fired, they turned right onto Lowry Avenue and began driving eastbound, the same direction as the car from which the shots had been fired. Having heard gunfire, both officers drew their weapons while still traveling in their patrol car. Upon seeing Loyd, both officers noticed that he was holding a handgun. The officers turned into the parking lot behind a convenience store. Moore began fleeing when he saw the infrared laser from one of the officer's guns. As they ran away, Loyd was between Moore and the police car, approximately ten feet behind Moore. While the car was still in motion, Officer Indehar fired multiple shots in Moore and Loyd's direction from the passenger-side window.[1] Within the first couple of shots being fired, one of Officer Indehar's bullets hit Moore in the left arm. Moore continued to run through the parking lot and escaped the area through a hole in a fence in the back of the lot.

A friend drove Moore to an emergency room where hospital personnel contacted police authorities to report that a gunshot victim was being treated. After Moore was treated, a police officer took him into custody. Moore was interrogated, booked into the jail, and charged with first-degree assault for allegedly shooting at Officers Hafstad and Indehar. Moore was jailed for a month until his charge was dropped for lack of evidence. Loyd, who was also charged with first-degree assault for attempting to shoot at the officers, eventually pled guilty to reckless discharge of a firearm within a municipality.

---

[1]Officer Indehar states in his deposition that he observed Loyd "look back" and assumed Loyd was "going to start shooting again." He claims that Loyd had shot at the squad car as they made the turn from Lyndale onto Lowry Avenue. At sentencing, Loyd testified that he never shot at the squad car. There is no indication in the record that Officer Indehar objected to the use of Loyd's sentencing transcript for purposes of summary judgment, thus at this stage of the proceeding, we must accept as true that Loyd never shot at the squad car. Cf. Walker v. Wayne County, 850 F.2d 433, 435 (8th Cir. 1988) ("[I]f a party fails to challenge hearsay evidence submitted to the court, the court does not commit error in considering such evidence.").

Moore brought suit against Officer Indehar under 42 U.S.C. § 1983, alleging a violation of his Fourth Amendment right to be free from the use of excessive force. Officer Indehar moved for summary judgment asserting a defense of qualified immunity. The district court granted summary judgment, and Moore appeals.

II.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998) (citations omitted). A section 1983 action is supported when a police officer violates this constitutional right. Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003). However, under the doctrine of qualified immunity, a police officer is entitled to dismissal of such an action if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sanders v. City of Minneapolis, 474 F.3d 523, 526 (8th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity is not just a defense to liability, it constitutes immunity from suit." Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005) (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).

We employ a two-step process when considering an officer's claim of qualified immunity. First, viewing the evidence in the light most favorable to the plaintiff, we determine whether the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If we determine that the officer violated a constitutional right, only then must we consider "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." Vaughn v. Greene County, 438 F.3d 845, 850 (8th Cir. 2006) (citing Saucier, 533 U.S. at 202). "This second step is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006) (internal quotations omitted).

In this action, Moore asserts that he was subjected to excessive force in violation of the Fourth Amendment when Officer Indehar shot him in the arm. We begin the qualified immunity analysis by determining if Officer Indehar violated Moore's constitutional rights. "To establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate a seizure occurred and the seizure was unreasonable." McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003) (citing Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999)). When an officer restrains an individual's liberty through physical force or a show of authority, a Fourth Amendment seizure occurs. Terry v. Ohio, 392 U.S. 1, 20 n.16 (1968). However, not every police officer act that results in a restraint on liberty necessarily constitutes a seizure, rather the restraint must be effectuated "through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597 (1989).

Officer Indehar argues that, under Brower, because he was shooting at Loyd, Moore could not have been seized because Moore was not the object of "means intentionally applied." Moore responds that Officer Indehar's subjective intent should not be considered because Officer Indehar intentionally discharged his gun in the direction of Moore, and therefore Officer Indehar seized him using "means intentionally applied" as explained in Brower. Moore further asserts that the Supreme Court has specifically provided that, even if Officer Indehar had intended to shoot Loyd, Moore could still be seized for Fourth Amendment purposes based on Brower's statement that "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." Id. at 596 (internal citations omitted).

In both Hill v. California, 401 U.S. 797, 802-04 (1971), and Maryland v. Garrison, 480 U.S. 79, 85-89 (1987), the cases upon which the Court relied in Brower,

the seizures resulted from factual mistakes as to identity. See Brower, 489 U.S. at 596. In Hill, the police mistakenly arrested a man who was in Hill's apartment believing that man to be Hill, see 401 U.S. at 802-04, and in Garrison, the police obtained a search warrant for the third floor apartment at a specific address mistakenly believing that there was only one apartment on the third floor, see 480 U.S. at 85-89.

The question presented here is not one of mistaken identity, rather one of intent. As other circuits have explained, bystanders are not seized for Fourth Amendment purposes when struck by an errant bullet in a shootout. See Claybrook v. Birchwell, 199 F.3d 350, 355, 359 (6th Cir. 2000) (determining that plaintiff, who was struck by errant bullet during police shootout with her father-in-law, was not seized because officers were aiming at her father-in-law and did not realize she was hiding in nearby parked car); Childress v. City of Arapaho, 210 F.3d 1154, 1156-57 (10th Cir. 2000) (finding, in hostage shooting case, no Fourth Amendment "seizure" because "[t]he officers intended to restrain the minivan and the fugitives, not [the hostages]"); Medeiros v. O'Connell, 150 F.3d 164, 167-69 (2nd Cir. 1998) (holding that where a hostage is struck by an errant bullet, the governing principle is that such consequences cannot form the basis of a Fourth Amendment violation); Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991) (explaining that Brower "does not mean . . . that a seizure occurs just so long as the act of restraint itself is intended . . . though it restrains one not intended to be restrained"); Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 794-96 (1st Cir. 1990) (declining to hold that hostage was seized for Fourth Amendment purposes when police officers fired at suspect's getaway car and accidentally struck the hostage). Thus, Moore must show that Officer Indehar intended to seize Moore through the means of firing his weapon at Moore to establish a Fourth Amendment claim.

Moore points to evidence in the record that contradicts Officer Indehar's claim that he was aiming at Loyd, not Moore. That evidence includes (1) a police report from Sergeant Chuck Peter, Officer Indehar's supervisor, in which Sgt. Peter reported

-6-

that either Officer Hafstad or Officer Indehar had "air[ed] information regarding 2 suspects [who] were running south and east from the SE area of Lowry and Lyndale," and that Sgt. Peter had "found out that Officer Indehar had also shot at the 2 people that had fled on foot," (2) a recommendation from Sgt. Peter that Officer Indehar receive a Medal of Honor for his actions in this incident wherein Sgt. Peter states, "Officer Indehar shot at Moore," and (3) Moore's subsequent arrest and one-month detention for assaulting the officers. Before the district court, Indehar challenged Sgt. Peter's police report and the recommendation he submitted as inadmissible evidence. The district court properly declined to consider this evidence, finding that it constituted hearsay and, thus, was inadmissible. See Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001) ("While we review the record in the light most favorable to . . . the non-moving party, we do not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay."); Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993) ("The district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial."); Walker, 850 F.2d at 434-35 (interviews in police report constituted inadmissible hearsay). Furthermore, Moore's charge for allegedly assaulting Officers Hafstad and Indehar does not create a genuine issue as to Officer Indehar's intent at the time he fired his weapon, and there is no evidence that Officer Indehar was involved in the decision to arrest and charge Moore.

Officer Indehar's sworn deposition testimony describing the incident constitutes some evidence regarding his intentions upon firing his weapon. According to Officer Indehar, when he and Officer Hafstad arrived upon a scene at which gun shots had been fired, Loyd was holding a firearm, and Loyd made a gesture which Officer Indehar interpreted as Loyd preparing to shoot at them. In response to Loyd's actions, Officer Indehar fired at Loyd, but missed his target, striking Moore in the arm. If we considered only Indehar's deposition testimony as proof of intent, Moore was not seized for purposes of the Fourth Amendment and, thus, failed to show that Officer Indehar's actions violated his Fourth Amendment rights. This is *not*, however, a

situation where Moore's only chance at defeating qualified immunity rests with "the hope that the jury might disbelieve [Indehar's] testimon[y]." Thompson v. Hubbard, 257 F.3d 896, 899 (8th Cir. 2001) (quoting Gardner v. Buerger, 82 F.3d 248, 252 (8th Cir. 1996).

Our responsibility is to view the facts in the light most favorable to Moore, see O'Neil v. City of Iowa City, 496 F.3d 915, 917 (8th Cir. 2007) ("In deciding a motion for summary judgment, 'courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion.'" (quoting Scott, 127 S. Ct. at 1774) (alteration in original)), and one critical set of facts–that when Officer Indehar arrived on a scene where gun shots had been fired, Moore began fleeing; that Officer Indehar aimed his gun and fired with his handgun pointed at Moore;[2] that Officer Indehar's bullet hit Moore; and that after the shooting, Officer Indehar secured by handcuffing four other males who remained in the parking lot–rebuts Officer Indehar's deposition testimony that he was aiming at Loyd and did not intend to shoot Moore, thus presenting a genuine issue as to Officer Indehar's intent when he fired his weapon.[3] The most notable of these facts, of course, is that Officer Indehar's bullet struck Moore. Cf. Mercado v. City of Orlando, 407 F.3d 1152, 1155, 1158 (11th Cir. 2005) (holding that, despite the officer's claim that he was aiming for the victim's shoulder, for summary judgment purposes the

---

[2]Officer Indehar testified that to maintain his law enforcement certification he is required to demonstrate accuracy with his handgun twice a year and that over the previous ten years he had passed the qualification tests on the first attempts except on two occasions. On those two occasions he was able to pass the qualification tests on his second attempts.

[3]We note that Officer Hafstad testified in his deposition that he indeed fired his weapon at Moore and not Loyd. He did so through the windshield of the squad car and while driving the vehicle. We note this testimony to demonstrate the flaw in the dissent's reliance upon the fact that Moore and Loyd were running away in a "straight-line path" with Loyd closer to the squad car as support for Officer Indehar's claim that he was intending to shoot Loyd, the closer individual.

court "must assume that [the officer] was aiming for [the victim's] head based on the evidence that [the officer] was trained to use the ["less-lethal," baton-launching] weapon, that the weapon accurately hit targets from distances up to five yards, and that [the victim] suffered injuries to his head."). A genuine dispute of fact remains as to whether Officer Indehar intended to seize Moore, or Loyd, or both Moore and Loyd, when Officer Indehar fired his weapon. Furthermore, Officer Indehar clearly intended, as demonstrated by his handcuffing of the four males who remained in the area, to detain, at least temporarily, all individuals in the area, evincing a reasonable inference that Officer Indehar was seeking to seize Moore when Officer Indehar shot Moore. In light of these facts, a reasonable jury could find that Officer Indehar intentionally shot Moore in an effort to effect his apprehension. See Gardner, 82 F.3d at 253 (holding that although proper focus is on the seizure itself, courts should not "refuse to let juries draw reasonable inferences from evidence about events surrounding and leading up to the seizure"); see also Littrell v. Franklin, 388 F.3d 578, 586 (8th Cir. 2004) ("[W]here questions of historical fact exist, the jury must resolve those questions so that the court may make the ultimate legal determination of whether officers' actions were objectively reasonable in light of clearly established law.").

"However, as Brower makes clear, a seizure, standing alone, is not sufficient for section 1983 liability. The seizure must be unreasonable." McCoy, 342 F.3d at 847 (citing Brower, 489 U.S. at 599). In situations where an officer attempts to apprehend a subject by using deadly force, courts analyze the seizure under the Fourth Amendment's objective reasonableness standard. Craighead v. Lee, 399 F.3d 954, 961 (8th Cir.), cert. denied, 546 U.S. 951 (2005). "Hence, '[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'" Id. (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)). However, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Brosseau v. Haugen, 543 U.S. 194, 197-98 (2004)

-9-

(quoting Garner, 471 U.S. at 11). "Whether an officer's use of force is reasonable is 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" McCoy, 342 F.3d at 848 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Assuming the facts in the light most favorable to Moore, a jury could decide that Officer Indehar's decision to use deadly force to seize Moore was objectively unreasonable. When Officer Indehar arrived on the scene, shots had been fired and he saw Loyd holding a gun. While Loyd and Moore began running away from the officers, it was Loyd, not Moore, who moved in such a manner as to suggest to Officer Indehar that Loyd might begin shooting at the officers. Officer Indehar specifically states that he did not see Moore with a gun and that Moore did not pose a threat to his safety. Thus, assuming the facts as we must, Officer Indehar's use of excessive force against an unarmed man who was simply fleeing from the officers was unreasonable and a violation of the Fourth Amendment.

B.

Our consideration of a qualified immunity defense does not end with the determination of whether an officer's conduct violated a constitutional right. Next, we must consider whether Moore's right to be free from excessive force is clearly established. In reaching this determination, we must decide "whether a reasonable official would understand his conduct violated" Moore's right to be free from excessive force. Henderson v. Munn, 439 F.3d 497, 503 (8th Cir. 2006). "The key distinction between [this reasonableness inquiry and the one made under the first step of the qualified immunity analysis] is that the right allegedly violated must be defined at the appropriate level of specificity before a court can determine whether it was clearly established." Craighead, 399 F.3d at 962 (citing Saucier, 533 U.S. at 202).

Since 1985, it has been established by the Supreme Court that the use of deadly force against a fleeing suspect who does not pose a significant threat of death or

serious physical injury to the officer or others is not permitted.  Garner, 471 U.S. at 11; see Samuelson, 455 F.3d at 877 ("The right to be free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures." (internal quotation and alteration omitted)).  On the facts we are required to assume at this point in the case, Moore posed no threat to Officers Indehar and Hafstad or to any other person; Officer Indehar admitted as much in his deposition and in his responses to Moore's interrogatories.  When Officer Indehar arrived on the scene, shots had been fired, however he specifically noted that Moore was not holding a firearm and the only action Moore took was to flee the scene.  Thus, a reasonable officer would have known shooting Moore was a violation of Moore's constitutional rights; as such, a right to be free from the use of excessive force in Moore's situation was clearly established.

III.

Accordingly, we reverse the district court's grant of summary judgment based on qualified immunity and remand for further proceedings.

BEAM, Circuit Judge, dissenting.

The district court correctly invoked the qualified immunity privilege to protect Officer Kurt Indehar from Adam Moore's unsupported constitutional claim, granting summary judgment and dismissal.  The panel majority ("court" or "panel") now reverses this holding.  From this result, I respectfully dissent.

Police officers assigned to street duty in populous urban locations have difficult and dangerous jobs, especially in high crime areas and more especially at places where gangs of armed young men congregate and tend to shoot at each other and even at passing vehicles.  Into this adverse environment came Officers Indehar and Hafstad

on the evening of March 23, 2003, exposing themselves as we now see to personal liability and the risk of interference with their on-going governmental functions.

The qualified immunity privilege Indehar asserts is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The privilege "is an *immunity from suit* rather than a mere defense to liability." Id. Indeed, Judge Murphy writing in Nelson v. County of Wright, 162 F.3d 986 (8th Cir. 1998), states that "[t]he applicability of qualified immunity . . . should be decided at the 'earliest possible stage in litigation.'" Id. at 989 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

As noted by Judge Shepherd, the United States Supreme Court has delineated a two-part qualified immunity analysis. Saucier v. Katz, 533 U.S. 194, 201 (2001). Its applicability may be tested, as here, by motion for summary judgment. In this context, a reviewing court must first consider whether taken in the light most favorable to Moore, the facts show that Indehar violated a constitutional right. Id. If this threshold question is answered in the affirmative, "the next sequential step is to ask whether the right was clearly established." Id.

In this case, however, we need only answer the first question: did Indehar through use of excessive force directed at Moore, violate Moore's Fourth Amendment rights? The answer to this inquiry is a resounding "no."

In determining whether a constitutional violation has occurred, we are required to make a factual determination based upon the evidence in the record. See Scott v. Harris, 127 S. Ct. 1769, 1774-75 (2007). But, the applicability of qualified immunity in a particular instance is "a question of law." Nelson, 162 F.3d at 989.

At the summary judgment stage, the facts asserted by Moore need to be viewed in the light most favorable to him as the non-moving party, but only if he establishes

-12-

a "'genuine' dispute as to those facts." Scott, 127 S. Ct. at 1776 (quoting Fed. R. Civ. P. 56(c)). A plaintiff, here Moore, seeking to defeat a properly supported summary judgment motion based on qualified immunity must raise some genuine issue of *material* fact as to whether a constitutional violation has actually occurred. See id. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Here, there are no material facts in dispute that bear upon the only issue before the court–qualified immunity vel non.

Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights. Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997). See, e.g., Norris v. Engles, 494 F.3d 634, 638 (8th Cir. 2007); Wright v. Rolette County, 417 F.3d 879, 884-87 (8th Cir. 2005), cert. denied, 126 S. Ct. 1338 (2006). In Thompson v. Hubbard, 257 F.3d 896 (8th Cir. 2001), Judge Wollman stated, for instance, "to defeat the motion for summary judgment, [Moore] needed to present enough evidence to permit a reasonable jury to conclude that [Indehar's] use of deadly force was objectively unreasonable." Id. at 899 (citing Gardner v. Buerger, 82 F.3d 248, 252 (8th Cir. 1996)).

As indicated, Moore asserts that his Fourth Amendment rights were violated because Indehar subjected him to excessive force. I agree with the court that "[t]o establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate a seizure occurred *and* the seizure was unreasonable." McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003) (emphasis added) (citing Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999)). Failure to establish either element, i.e., seizure or unreasonableness, is fatal to plaintiff's claim. And, not every act of a police officer that results in a restraint on liberty necessarily

constitutes a seizure, rather the restraint must be effectuated "*through means intentionally applied*." Brower v. County of Inyo, 489 U.S. 593, 597 (1989). Finally, the court is correct when it says that the issue in this case is one of intent and that bystanders (such as Moore) are not seized for Fourth Amendment purposes when struck by an errant bullet in a shootout. Ante at 6. Thus, to establish his Fourth Amendment claim, Moore must show that Officer Indehar intended to seize Moore by intentionally firing his weapon *at Moore*.

With this legal framework in mind, I turn to the undisputed material facts, many of them taken directly from Judge Shepherd's opinion.

> Moore and several others, including Rufus Loyd, were "hanging out" in a parking lot behind a convenience store near the intersections of Lowry and Lyndale Avenues in North Minneapolis, Minnesota, when an occupant in a car traveling eastbound on Lowry Avenue fired five to seven shots in the direction of the [Moore-Loyd] group. Though Moore attempted to run, he tripped and fell to the ground. After the car passed, Moore ran to the corner of a building to see if he could identify the car, and Loyd stepped out into the street, pulled a pistol, and fired two or three shots towards the fleeing car. Moore was not armed . . . .[4]
>
> At that same time, Officers Peter Hafstad and Kurt Indehar were traveling in a marked Minneapolis Police Department patrol car northbound on Lyndale Avenue to answer an unrelated call. When they heard the shots being fired, they turned right onto Lowry Avenue and began driving eastbound, the same direction as the car from which the shots had been fired. Having heard gunfire, both officers drew their weapons while still traveling in their patrol car. Upon seeing Loyd, both officers noticed that he was holding a handgun. The officers turned into the parking lot behind a convenience store.

---

[4]Officer Hafstad testified that Moore had a gun both in the street and in the parking lot and aimed it at the officers as they pulled into the parking lot. App'x at 224, 231. However, Moore denies this claim. So, for purposes of the summary judgment motion, we must assume that he was not armed.

Ante at 2-3. Loyd and Moore ran away across the lot. For a short distance they ran side-by-side. Then Moore outdistanced Loyd and they ran one behind the other in more or less a direct line toward a hole in the fence. App'x at 59-60, 166, 229. At relevant times, Loyd was between Moore and the police car and approximately ten feet behind the fleeing Moore. App'x at 166. While the car was still in motion, Officer Indehar fired "more than one" shot in Moore and Loyd's direction out the front passenger-side window.[5] App'x at 169. Unbeknownst to Indehar at the time, one of his bullets hit Moore in the left arm. App'x at 177-78, 108. Moore continued to run through the parking lot and escaped the area through a hole in a fence in the back of the lot. In his deposition, Moore testified as follows regarding his attempt to evade Officers Indehar and Hafstad: "I ran south behind the wood fence and all the way down to the gated fence (indicating). There is a hole in the gated fence cut out, and I ran right through there." App'x at 109.

As Loyd and Moore ran across the parking lot with the police car following, Indehar fired at Loyd because "I [Indehar] observed [Loyd] look back, and I thought he was going to start shooting again." App'x at 169. Indehar also testified that he "didn't intend to shoot Mr. Moore."[6] App'x at 178. Thus, there is absolutely no

---

[5]The court states that "Officer Indehar aimed his gun and fired with his handgun pointed at Moore." Ante at 8. This may be a technically correct statement, but it is misleading. It is undisputed that as Moore and Loyd ran away from the police car, they ran generally side-by-side for a short distance and then Moore outdistanced Loyd as they proceeded in a straight line toward a hole in the parking lot fence. App'x at 59, 162-170, 227-232. Accordingly, it is not possible for Indehar to have pointed his handgun in Moore's direction without also pointing the weapon in Loyd's direction as well.

[6]In the court's footnote 3, ante at 8-9, the majority attempts to attack the credibility of Officer Indehar's testimony on this issue by pointing out that Officer Hafstad "fired his weapon at Moore and not Loyd." Hafstad's actions are not proof of Indehar's intent. While there is no evidence as to exactly when each officer fired his weapon, it is clear that initially Moore was slightly to the left of Loyd and that

-15-

admissible evidence in the record that indicates that Indehar intentionally "shot at Moore" or that directly rebuts or disputes Indehar's statement that he did not intend to shoot at Moore. And as earlier noted, Moore has the burden of proof on the issue of intent to seize through use of excessive force.

Despite this dearth of evidence supportive of Moore's claim, the panel appears to bottom its decision to reverse the district court on a purported responsibility to "view the facts in the light most favorable to Moore." Ante at 8. It is worth repeating, however, that this rule of evidentiary gloss applies only to facts that are *material* to the legal issue under consideration, i.e., the occurrence of a Fourth Amendment seizure, Federal Rule of Civil Procedure 56(c), and to such facts that are genuinely in dispute. Scott, 127 S. Ct. at 1776.

Upon analysis of the available facts, it appears that the court's ultimate conclusion relies upon four evidentiary or credibility inferences. I review each in order.

First, the panel attempts to depreciate the value of Indehar's deposition declarations made under oath, intimating that his words constitute self-serving statements. Ante at 8. Of course Indehar's words are self-serving as are the testimonial words of virtually any party to any litigation, including, in this case, the testimony and statements of Moore and Loyd. But self-serving words are not

---

Hafstad, the driver, fired his weapon through the windshield in front of him while Indehar fired his weapon from a different angle, that is, out the right passenger-side window. Both officers discharged their guns while the car was moving. Accordingly, any evidentiary flaw lies with the court's attempt to adjust Indehar's unrebutted deposition testimony that he did not intend to fire at Moore. Further, a fair analysis of the deposition testimony of the officers, especially their markings on Ex. J, App'x at 59; Ex. K, App'x at 60, indicates that there never was a time relevant to this fast-moving situation when Loyd was not positioned close to Moore or between Moore and Indehar.

untruthful or second-class words, especially when a commissioned police officer is involved. In <u>Thomas v. Runyon</u>, 108 F.3d 957 (8th Cir. 1997), the court noted that even sworn statements, if unchallenged, are sufficient for the purposes of summary judgment. <u>Id.</u> at 961. Here, even with Indehar available to Moore by way of deposition cross-examination, no inconsistencies or issues of credibility were developed by Moore with regard to Indehar's testimony. And, there is substantial case law in this circuit sustaining summary judgment where this occurs. <u>Id.</u> "In order to defeat [a motion for summary judgment], plaintiff must develop some evidence or argument going beyond possible self-interest of the witness." <u>Id.</u> Moore's case totally fails in this regard.

Second, the panel hints at some qualitative weighing that arises from the idea that a "'jury might disbelieve [Indehar's] testimon[y],'" <u>ante</u> at 8 (alterations in original) (quoting <u>Thompson</u>, 257 F.3d at 899). But <u>Thompson</u> says "the plaintiffs may not stave off summary judgment 'armed with only the hope that the jury might disbelieve witnesses' testimony.'" <u>Thompson</u>, 257 F.3d at 899 (quoting <u>Gardner v. Buerger</u>, 82 F.3d 248, 252 (8th Cir. 1996)). Other circuits concur in this idea. "A party cannot create a dispute of fact by simply questioning the credibility of a witness." <u>Bodett v. CoxCom, Inc.</u>, 366 F.3d 736, 740 n.3 (9th Cir. 2004). <u>See also</u> <u>Dugan v. Smerwick Sewerage Co.</u>, 142 F.3d 398, 406 (7th Cir. 1998) (challenging the credibility of the movant's affiant is not, alone, generally enough to avoid summary judgment).

Third, the majority points to the undisputed fact that Indehar aimed his gun and fired in Moore's direction. <u>Ante</u> at 8. More importantly, however, the evidence is undisputed that Indehar also fired in Loyd's direction and, indeed, at Loyd.[7] App'x

---

[7]The court attempts to discredit Indehar by citing <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1154-55, 1158 (11th Cir. 2005) wherein an officer's claim that he was aiming his weapon at a seated victim's shoulder was refuted when a projectile launched by the policeman from a distance of six feet hit the victim's head instead.

at 169, 178. From other undisputed evidence given under oath, the gun-toting Loyd was running beside or following directly behind the fleeing Moore along a relatively straight-line path toward a hole in the fence, App'x at 59-60, 166, during which time Loyd, with gun in hand, looked back toward Officer Indehar. This firing in Moore's direction allegation, ante at 8, offers thin gruel as nourishment for an excessive force claim sufficient to support a Fourth Amendment seizure.[8]

Fourth, the court strangely refers to evidence that after Moore and Loyd disappeared through the hole in the fence, Indehar "secured by handcuffing four other males who remained in the parking lot." Ante at 8. This, the panel says, "rebuts Officer Indehar's" testimony that he was aiming at Loyd and not Moore, thus, presenting a genuine issue of fact as to Indehar's state of mind at an earlier time at a different location under different circumstances. How this evidence bears the weight placed upon it by the court is not readily evident. Likewise, its relevance or materiality to the issue of whether Indehar shot at Moore or only in his direction is difficult to divine.[9]

---

Ante at 9. This is far different than the firing of a handgun at a fleeing miscreant from the passenger-side window of a moving police car from a distance far in excess of six feet. App'x at 237.

[8]The court boldly states that "[a] genuine dispute of fact remains as to whether Officer Indehar intended to seize Moore, or Loyd, or both Moore and Loyd, when Officer Indehar fired his weapon." Ante at 9. This contention voices both an irrelevancy and an unsupportable conclusion. There is no dispute that both officers fired their weapons. The crucial issue is whether Officer Indehar intentionally fired at Moore rather than at Loyd when he discharged his firearm.

[9]The court says "[f]urthermore, Officer Indehar clearly intended, as demonstrated by his handcuffing of the four males who remained in the area, to detain, at least temporarily, all individuals in the area, evincing a reasonable inference that Officer Indehar was seeking to seize Moore when Officer Indehar shot Moore." Ante at 9. Under the facts of the situation, the officers clearly had probable cause to detain Moore and Loyd. However, the fighting issue here is the use of excessive force

-18-

In sum, Indehar's testimony that he fired at Loyd and that he did not intend to shoot Moore is offset only by testimony that Indehar fired "more than one" shot in Moore and Loyd's direction and by the fact that he later handcuffed four individuals in the vicinity of the convenience store. Given this evidence, there simply is no proof that a Fourth Amendment seizure occurred, making summary judgment for Indehar mandatory under this circuit's McCoy v. City of Monticello two-part test. Ante at 5.

Further, under element two of the McCoy v. City of Monticello requirements, even had there been a seizure, Indehar's actions were not unreasonable. As the district court correctly noted, the reasonableness of an officer's use of force must be judged from the "'perspective of a reasonable officer on the scene' in light of the fact that officers 'are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.'" App'x at 15-16 (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)). Given the undisputed material facts of this case, I agree with the district court that, "[c]onsidering the totality of the circumstances . . . even if [Moore] was 'seized,' Indehar's use of force was not objectively unreasonable." App'x at 18.

---

to do so. How this handcuffing of persons in the parking lot after Moore and Loyd had departed through the hole in the fence bears upon the discrete issues in this appeal is not explained. The record indicates that after Moore and Loyd disappeared, a group of people had congregated around a nearby parked car with one male, whose hand could not be seen, reaching into the vehicle from the car's open door. Officer Indehar "thought he had a gun." App'x at 173. Concerned for their safety, the officers ordered the men to show their hands. When the one man did not, he was more forcefully ordered to do so and the area was then secured by the handcuffing of the four men. App'x at 173-76. How this act "evinc[ed] a reasonable inference that Officer Indehar was seeking to seize Moore" through excessive force, is not readily evident.

Finally, under the undisputed material facts in this matter, it is not possible, again for the reasons set forth by the district court, App'x at 19, that a reasonable police officer in the same or similar circumstances could have believed that he or she was violating Moore's constitutional rights. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"We review de novo the legal issue relating of the existence of qualified immunity." Guite v. Wright, 147 F.3d 747, 749 (8th Cir. 1998). The district court correctly identified and applied the applicable standards and reached the correct conclusion. "Particularly applicable to this case is the principle that '[s]ummary judgment is appropriate against a party who has the burden of proof at trial and has failed to make a sufficient showing to establish the existence of an essential element to h[is] case.'" Lawson v. Hulm, 223 F.3d 831, 834 (8th Cir. 2000) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Moore has clearly not shouldered this burden. Officer Indehar is entitled to qualified immunity.

Accordingly, I dissent.

_____